STATE of Wisconsin, Plaintiff-Respondent,

v.

Franz MICHELS, Defendant-Appellant.†

Court of Appeals

*No. 87–0254–CR. Submitted on briefs June 22, 1987.—Decided August 19, 1987.*
(Also reported in 414 N.W.2d 311.)

† Petition to review denied.

On behalf of the defendant-appellant, the cause was submitted on the brief of *Mark Lukoff,* first assistant state public defender of Milwaukee.

On behalf of the plaintiff-respondent, the cause was submitted. on the brief of *Donald J. Hanaway,* attorney general and *David J. Becker,* assistant attorney general.

Before Scott, C.J., Brown, P.J., and Nettesheim, J.

NETTESHEIM, J.   Franz Michels appeals from a judgment of conviction for manslaughter, heat of passion in violation of sec. 940.05(1), Stats.[1] The conviction resulted from the death of Michel's foster

---

[1] Michels notes that the judgment of conviction correctly recites his conviction for manslaughter but incorrectly cites to sec. 940.02(1), Stats., as the statute under which he was convicted. Upon remittitur, we direct that the judgment be corrected to reflect the correct statutory section, sec. 940.05(1), Stats.

child, Richard Crivello. Michels argues that: (1) the state improperly filed an information charging second-degree murder after he had waived the right to a preliminary hearing on a criminal complaint which only charged homicide by reckless conduct; (2) his inculpatory statements were involuntarily made and should have been suppressed; (3) the admission of his wife's testimony regarding the death of their foster child violated the husband-wife privilege; (4) the trial court erroneously denied his request for an instruction on the lesser-included offense of homicide by reckless conduct; and (5) the conviction is not supported by the evidence. We reject all of Michels' arguments and affirm the conviction.

On February 11, 1985, Michels' foster child, Richard, was discovered unconscious at the Michels' home. Earlier that day, Richard and Michels' wife, Gisela, had an altercation involving profane language. This row related to Richard's unkept room. Gisela testified that when Michels returned to their home, she told him of Richard's behavior whereupon Michels became "kind of upset." Michels then confronted Richard about his behavior. Michels testified that he struck Richard with his hand and with a "cat-scratching" post after Richard denied using profane language. Michels also testified that when he left the room, Richard was sitting up and seemed all right. Gisela testified that she did not see her husband strike Richard and, because the child had epilepsy, she assumed that he had suffered a seizure when he was subsequently discovered unconscious. Richard was pronounced dead at the hospital as the result of a skull fracture and brain hemorrhage due to external trauma.

## The Information

Michels argues that the state improperly filed an information with a higher charge than that filed in the criminal complaint after he had waived a preliminary hearing. The criminal complaint charged Michels with homicide by reckless conduct in violation of sec. 940.06, Stats. The information following Michels' waiver of preliminary hearing charged him with second-degree murder in violation of sec. 940.02, Stats.

Section 971.01(1), Stats., provides in relevant part:

> The district attorney shall examine all facts and circumstances connected with any preliminary examination ... and ... shall file an information according to the evidence on such examination subscribing his name thereto.

Michels complains that because the legislature did not include the waiver of a preliminary hearing within the language of the statute, it did not intend to allow the filing of greater charges in an information following a waiver.

■

The construction of a statute raises a question of law. *See State v. Clausen,* 105 Wis. 2d 231, 243, 313 N.W.2d 819, 825 (1982). As a result, we owe no deference to the trial court's decision. *LePoidevin v. Wilson,* 111 Wis. 2d 116, 121, 330 N.W.2d 555, 558 (1983).

■

We note that sec. 971.01(2), Stats., clearly contemplates the filing of an information following the waiver of a preliminary hearing. It provides:

> The information shall be filed with the clerk within thirty days after the completion of the preliminary examination or waiver thereof .... .

When construing a statute, we will look to the language of the entire statute and not just to one section. *See Arneson v. Arneson,* 120 Wis. 2d 236, 243, 355 N.W.2d 16, 19 (Ct. App. 1984). Construing sec. 971.01 as a whole, we conclude that the legislature intended to permit a district attorney to file *any* charge in the information so long as it was based on the facts adduced at the preliminary hearing or on the facts set out in the complaint when a preliminary hearing is waived.

■ The state cogently points out that Michels' interpretation of the statute would lead to an unreasonable or an absurd result which we are to avoid when construing legislation. *In re P.A.K.,* 119 Wis. 2d 871, 881, 350 N.W.2d 677, 683 (1984). Michels' argument, carried to its logical conclusion, would preclude the filing of any information following the waiver of a preliminary hearing because sec. 971.01(1), Stats., only mentions the filing of an information based on the "facts and circumstances connected with any preliminary examination." Such an interpretation would be absurd.

We base our holding on *Thies v. State,* 178 Wis. 98, 189 N.W. 539 (1922), which we conclude directly resolves this issue. In *Thies,* the supreme court held that "a district attorney may, where a preliminary examination is waived, file an information for *any* offense or offenses growing out of or relating to the transaction charged in the complaint." (Emphasis added.) *Id.* at 105, 189 N.W. at 541. There, a district

attorney, working under statutory authority similar to that found here, reduced a rape charge filed in a criminal complaint to an incest charge filed in the information following the defendant's waiver of a preliminary hearing. The court reasoned that a preliminary hearing is "but an inquiry made for the purpose of developing the facts and circumstances so as to enable the district attorney to proceed." *Id.* at 106, 189 N.W. at 542. Consequently, the court concluded that when a defendant waives a preliminary hearing, he or she waives any inquiry into the offense charged in the complaint and, as to any offense growing out of the events referred to in the complaint, a defendant is in the same position as if a preliminary hearing had been held on those charges as well. *Id.*

Michels attempts to distinguish *Thies* on the ground that *Thies* involved a reduction in the charge filed in the information from that filed in the complaint. Here, the charge was increased. This fact, however, does not appear to be relevant to the court's reasoning in *Thies*. Rather, the focus of the *Thies* holding is on whether the information charge is related to the same events set out in the complaint regardless of the level of the charge. Here, the information charge is related to the events set out in the criminal complaint regarding Richard's death. Consequently, the charge was properly filed under sec. 971.01, Stats., and Michels is in the same position as if a preliminary hearing had been held on the second-degree murder charge as well.

## The Statement

Michels argues that statements he made to the police during noncustodial questioning were involun-

tary and should have been suppressed.[2] During questioning, Michels stated to the police, "I tell you I done it, I hit him real good." This statement came after Michels was shown a single autopsy photograph of Richard's body.[3]

A confession is involuntarily made if it is procured by coercive means or is the product of improper pressures exercised by the police. *State v. Clappes,* 136 Wis. 2d 222, 235–36, 401 N.W.2d 759, 765 (1987). A trial court's findings of evidentiary or historical facts will not be overturned unless they are contrary to the great weight and clear preponderance of the evidence. *Id.* at 235, 401 N.W.2d at 765. Stated otherwise, this is the "clearly erroneous" test. Sec. 805.17(2), Stats. However, whether any constitutional principles have been offended involves an independent review by an appellate court. *Clappes* at 235, 401 N.W.2d at 765. The ultimate determination of whether a confession is voluntary depends upon the totality of the circumstances. *Id.* at 236, 401 N.W.2d at 765–66. Some affirmative evidence of improper police practices deliberately used to procure a confession must be shown before we will conclude that a confession was

---

[2]Michels also argues that the erroneous admission of his statement was not harmless. Because of our conclusion that his statement was made voluntarily, we are not required to address this issue.

[3]We note that the autopsy photograph was not made a part of the record on appeal. It is the duty of the appellant to see that the evidence is included in an appellate record. *State v. Smith,* 55 Wis. 2d 451, 459, 198 N.W.2d 588, 593 (1972). Failure to do so may be grounds for dismissal. *Id.* Regardless, we choose to respond to Michels' arguments, but are constrained to the description of the photograph provided by both Michels and the state.

involuntarily given and in violation of an individual's constitutional rights. *Id.* at 239, 401 N.W.2d at 767.

Here, the trial court's historical findings of fact are not challenged on appeal and are briefly summarized as follows: upon discovering that Richard's death was not caused by epilepsy, the police commenced a criminal investigation which focused primarily on Gisela due to the fact that both she and Michel's son told the police that Michels was not present when Richard was injured; the police requested that Michels and his son come in for questioning, which they did voluntarily; the police spent about one hour questioning the son while Michels waited outside; this interview did not change the focus of the police investigation with Gisela remaining the primary suspect; during his interview with police, Michels persisted in his story that Richard had suffered a seizure and possibly struck his head when he fell; about an hour after Michel's interview commenced, the police showed Michels the photograph which depicted the injuries to Richard's skull; the photograph was displayed to Michels in an effort to refute his opinion that the death was accidental; ten to fifteen minutes later, Michels made the statement at issue here; Michels was then placed under arrest and read his *Miranda* rights.

The ultimate determination of whether a confession is voluntary under the totality of the circumstances requires a court to balance the personal characteristics of a defendant against the pressures imposed on him or her by the police in order to induce him to respond to the questioning. *Id.* at 236–37, 401 N.W.2d at 765–66. The use of an autopsy photograph is but one factor to consider in the totality of the

circumstances. *See State v. Woods,* 117 Wis. 2d 701, 729–30, 345 N.W.2d 457, 471–72 (1984). In addition to the autopsy photo, Michels points to the fact that he spent three years in a concentration camp in Yugoslavia and was unable to read or write English as contributing to the involuntariness of his statement.

■ While we conclude that these factors are certainly relevant to a determination of voluntariness, we cannot conclude that they mitigate the countervailing factors, documented in the trial court's findings, which indicate that the police used the photographs in a reasonable and ordinary manner. Michels was not under arrest and this was not custodial questioning. Michels was not barraged with several photographs and did not blurt out the statement contemporaneously with being shown the photograph. The photograph was displayed to counter Michels' "accidental" version of the homicide—not to "shock" Michels into making an incriminating statement. Indeed, the trial court expressly found that the officers did not seek and did not anticipate the incriminating statement made by Michels. Rather, Gisela was the focus of the investigation at this time. The trial court concluded that Michels made the statement to clear his conscience and not because of any police tactic of overreaching. We conclude that, under the totality of the circumstances, Michels' statement was voluntary.

## Husband-Wife Privilege

Michels argues that the trial court erroneously admitted the testimony of Gisela in violation of the husband-wife privilege. *See* sec. 905.05, Stats. This privilege, however, is ineffective when one spouse is

charged with a crime against "the person ... of a child of either." *See* sec. 905.05(3)(b). This issue raises the question of whether a foster child is a child of either spouse within the meaning of sec. 905.05 so as to render the husband-wife privilege inapplicable. To resolve this issue, we must construe the language of sec. 905.05. This raises a question of law. *Clausen,* 105 Wis. 2d at 243, 313 N.W.2d at 825.

We are restricted to the plain meaning of the statute if the statutory language is unambiguous. *See Hemerley v. American Family Mut. Ins. Co.,* 127 Wis. 2d 304, 307, 379 N.W.2d 860, 862 (Ct. App. 1985). We are able, however, to use rules of statutory construction to determine the meaning of an ambiguous statute. A statute is ambiguous if reasonable persons could disagree as to its meaning. *Kollasch v. Adamany,* 104 Wis. 2d 552, 561, 313 N.W.2d 47, 51–52 (1981). Whether reasonable persons could disagree also raises a question of law. *Hemerley,* 127 Wis. 2d at 307, 379 N.W.2d at 862.

We conclude that reasonable persons could construe the "child of either" exception of sec. 905.05, Stats., to mean a child with a biological or legal relationship to the parent on the one hand, or any child living in a family-type setting on the other. Therefore the statute is ambiguous and we must construe it.

The specific issue is whether the legislature intended the phrase "child of either" to reach those individuals acting as foster parents. The rules of construction require us to look at the statutory context, subject matter, scope, history and object to be

accomplished. *Id.* We will search for a reasonable meaning. *Id.*

The husband-wife privilege exists to encourage marital confidences and thereby preserve the marital relationship. *See Muetze v. State,* 73 Wis. 2d 117, 129, 243 N.W.2d 393, 398 (1976). The "child of either" exception was created to permit prosecution for crimes committed within the family unit. *See People v. Clarke,* 114 N.W.2d 338, 341 (Mich. 1962). Such crimes would normally have no other witnesses and would go unpunished in the event the exception in the statute was not permitted to operate. *Id.*

In light of the purpose of the exception, we conclude that a foster child is properly included within the "child of either" category stated in sec. 905.05(3)(b), Stats. This purpose would not be served by affording protection to only those children of a family unit with legal or biological relationships. Rather, it is to ensure that those individuals, particularly minor children, who are present in the home and are actively a part of the family structure are protected, via criminal prosecution, for crimes committed against them. Here, Richard had been present in Michels' home for about ten years and referred to Michels as his father. We believe that Richard's ties to the family unit were sufficient to trigger the "child of either" exception and, therefore, Gisela's testimony was properly admitted.

## Lesser-Included Offense

Michels argues that the trial court erroneously denied his request for a jury instruction on the lesser-

included offense of homicide by reckless conduct. While the trial court is given broad discretion with respect to the submission of jury instructions, *State v. Higginbotham*, 110 Wis. 2d 393, 403, 329 N.W.2d 250, 255 (Ct. App. 1982), when the issue is whether the evidence adduced at trial permits the giving of a lesser-included instruction, a question of law is presented. *State v. Williford*, 103 Wis. 2d 98, 112, 307 N.W.2d 277, 283 (1981). A refusal to give a lesser-included offense instruction when there exists a reasonable ground in the evidence for acquittal on the greater charge and for conviction on the lesser is error. *See State v. Mendoza*, 80 Wis. 2d 122, 150–51, 258 N.W.2d 260, 272. When deciding whether to submit a lesser-included instruction, the evidence must be viewed in the most favorable light it will reasonably admit of from the standpoint of the accused. *Id.* at 153, 258 N.W.2d at 273.

Homicide by reckless conduct contemplates behavior reflecting a total disregard for the safety of innocent people resulting in death. *State v. McClose*, 95 Wis. 2d 49, 52, 289 N.W.2d 340, 341 (Ct. App. 1980). It is a degree of negligent homicide. *Hayzes v. State*, 64 Wis. 2d 189, 198, 218 N.W.2d 717, 722 (1974). Michels analogizes his actions to those found in *Seidler v. State*, 64 Wis. 2d 456, 219 N.W.2d 320 (1974). In *Seidler*, the court held that an instruction on the lesser-included offense of homicide by reckless conduct was erroneously denied. There, the defendant killed a minor child by throwing her across the room and causing her to strike either a bedpost or the metal frame of a bunkbed and suffer internal injuries. The court reasoned that the defendant's conduct created a situation of unreasonable risk of harm or of death to the child. The court noted, however, that the defend-

ant's actions did not demonstrate a state of mind which could be constructively held to have intended to cause death.

We do not agree that Michels' actions equate with those in *Seidler.* We conclude that the trial court properly refused to submit the lesser-included instruction on homicide by reckless conduct. Under any reasonable view of the evidence there are no grounds for the conviction of Michels on the lesser charge of homicide by reckless conduct. His action of swinging an object described as a piece of wood, three to four inches in diameter, at Richard's skull can only be viewed as indicative of a constructive intent to cause harm rather than negligent conduct. *See Werner v. State,* 66 Wis. 2d 736, 747, 226 N.W.2d 402, 407 (1975).

Although we reject Michels' argument on this issue, we also note that we do not agree with the state's argument that Michels' actions were intentional, not negligent, and that therefore homicide by reckless conduct was properly rejected by the trial court as a lesser-included offense. This overlooks the law which holds that manslaughter, heat of passion (of which Michels was convicted) also is a degree of negligent homicide.[4] *Hayzes,* 64 Wis. 2d at 198, 218 N.W.2d at 722. Rather, the inquiry here, as it must be with all lesser-included issues, is whether there is a reasonable basis in the evidence for acquittal on the

---

[4]Failure to make this distinction is understandable in a case such as this involving second-degree murder and manslaughter, heat of passion where the defendant's conduct essentially consists of second-degree murder but where the state has failed in its burden to prove that the defendant was not acting in the heat of passion.

greater charge and for conviction on the lesser. *Mendoza,* 80 Wis. 2d at 150–51, 258 N.W.2d at 272. Michels' actions, viewed in a light most favorable to the request for the lesser-included offense of homicide by reckless conduct, are indicative at least of conduct inherently and consciously dangerous to life evincing a depraved mind regardless of human life, elements of second-degree murder.[5] *See* Wis J I—Criminal 1132. Such conduct constructively can be said to evince intent to cause death. *See Seidler,* 64 Wis. 2d at 463, 219 N.W.2d at 324. Michels' actions do not reasonably admit a high probability of substantial bodily harm, a condition required for homicide by reckless conduct. *See* Wis J I—Criminal 1160. Rather than a high probability of such harm, Michels' actions made such a result a certainty. The request for the lesser-included offense was properly denied.

## Sufficiency of Evidence

■

Michels argues that the evidence is insufficient to support his conviction for manslaughter, heat of passion. The manslaughter, heat of passion charge was, however, submitted to the jury at Michels' request as a lesser-included offense of second-degree murder. In making this request, Michels argued that

---

[5]Because Michels was charged with second-degree murder, and because the trial court concluded that manslaughter, heat of passion should also be submitted to the jury, Wis J I—Criminal 1132 was given to the jury. This instruction essentially states that the crime of manslaughter, heat of passion consists of the elements of second-degree murder but where the state has failed to prove that the defendant did not act in the heat of passion. Presumably, the jury in this case concluded that the state had not met its burden on this latter point.

there existed sufficient evidence to support his conviction on the lesser charge. *See Mendoza,* 80 Wis. 2d at 150–51, 258 N.W.2d at 272. Consequently, we conclude that Michels is judicially estopped from raising this issue because it is directly contrary to that argued in the trial court. *See In re H.N.T.,* 125 Wis. 2d 242, 253, 371 N.W.2d 395, 400 (Ct. App. 1985).

*By the Court.*—Judgment affirmed.