George HARRISON, Petitioner-Respondent,

v.

LABOR & INDUSTRY REVIEW COMMISSION, Respondent-
Co-Appellant.

FRIENDS PROFESSIONAL STATIONERY, INC., Petitioner-
Appellant,†

v.

LABOR & INDUSTRY REVIEW COMMISSION, Respondent.

Court of Appeals

*No. 93–3279. Submitted on briefs August 16, 1994.—Decided
September 14, 1994.*

(Also reported in 523 N.W.2d 138.)

†Petition to review denied.

491

On behalf of the petitioner-appellant, Friends Professional Stationery, Inc., the cause was submitted on the briefs of *Alan S. Brostoff*, attorney at law, of Milwaukee.

On behalf of the respondent-co-appellant, Labor and Industry Review Commission, the cause was submitted on the briefs of *James E. Doyle*, attorney general, and *David C. Rice*, assistant attorney general.

On behalf of the petitioner-respondent, George Harrison, the cause was submitted on the brief of *John E. Raftery* of *Hopp, Hodson, Powell & Raftery* of Sheboygan.

On behalf of the respondent, Labor and Industry Review Commission, the cause was submitted on the brief of *James E. Doyle,* attorney general, and *David C. Rice*, assistant attorney general.

Before Anderson, P.J., Brown and Snyder, JJ.

BROWN, J.    The central issue is whether sworn statements made by George Harrison relating to an age discrimination claim under state law were contrary to his sworn averments and testimony before a federal administrative law judge (ALJ) determining his qualifications for social security disability (SSI). A state ALJ ruled that the statements in the two proceedings were contrary to each other and used the principles of judi-

493

cial estoppel to deny Harrison's claim; LIRC agreed. We affirm the trial court's rejection of LIRC's rationale because LIRC has not yet persuaded us that the factual context of the two statements is the same.

Harrison worked for Friends Professional Stationery Division of Paper Box and Specialty Company as a printer/pressman operator from 1979 until November 1986. He had back surgery for removal of a disc in 1981. The surgery left him unable to perform all of the lifting and bending involved in the printer/press operator job. He was able to continue working, however, because his coworkers assisted him with the lifting and bending.

Paper Box terminated all of the employees in the Friends Professional Stationery Division in November 1986 and sold the division to Harrison's supervisor, to be operated as an independent company named Friends Professional Stationery, Inc. Prior to Harrison's termination, the supervisor asked Harrison how old he was and how long he intended to keep working. Harrison was sixty years old at the time of his termination. Friends hired most of the employees terminated by Paper Box, but did not hire Harrison.

On December 16, 1986, Harrison applied for SSI. He certified in his application that he had a disabling back condition which made him unable to work beginning on November 21, 1986. At the SSI hearing on December 7, 1987, Harrison testified that he was able to work in the past as a printer/press operator because coworkers assisted him, but doubted that he was now physically able to set up or load a large press. A vocational expert testified that Harrison could still do light work, although he could not perform his past job. "Light work" is defined under federal regulations as being able to lift no more than twenty pounds at a time with frequent lifting or carrying of objects weighing up

to ten pounds. The federal ALJ found that while Harrison's disability prevented him from performing his past job, he could still perform light work and, therefore, was not entitled to disability benefits.

Nearly simultaneous to his filing of the SSI claim, Harrison also filed age and handicap discrimination claims against Friends in a state action under the Wisconsin Fair Employment Act (WFEA). A finding was made that there was probable cause to show age discrimination, but no probable cause to show handicap discrimination. A state ALJ then heard the age discrimination claim on September 17 and October 12, 1990, nearly three years after Harrison's SSI hearing. To show age discrimination, Harrison had to prove that he was capable of performing the job and did so testify. Harrison also testified, however, that he had not sought to mitigate his damages by pursuing other available work because of a disabling back condition. Friends voiced concern about an inconsistency in Harrison's testimony, that he was capable of working at one point in his testimony, but that he had a disabling back condition at another point in his testimony. The ALJ adjourned the hearing so that Friends could take Harrison's deposition and discover the facts relating to the inconsistency. At the deposition, Friends found out about the SSI hearing for the first time. Subsequently, Friends moved to dismiss based on what it believed to be the inconsistency of Harrison's statements to the state ALJ that he was capable of working and his statements to the federal ALJ that he was incapable of working.

The state ALJ held that Harrison's sworn statements in the federal proceeding were factually contrary to his statements in the state proceeding and that Harrison was successful in convincing the federal

ALJ that he was incapable of performing the job he had as a printer/press operator. The state ALJ concluded that Harrison was therefore judicially estopped from asserting a contrary position in the state proceeding. LIRC affirmed. The circuit court reversed. It held, inter alia, that the positions taken by Harrison in his age discrimination case were "arguably not totally inconsistent with the position taken during the social security proceedings." Both LIRC and Friends have appealed.

Determining the elements and considerations involved before invoking the doctrine of judicial estoppel are questions of law which we decide independently and without deference to the commission. *Cf. Schaeffer v. State Personnel Comm'n,* 150 Wis. 2d 132, 138, 441 N.W.2d 292, 295 (Ct. App. 1989) (whether the elements of res judicata are satisfied is a question of law reviewed de novo). Once these are determined, it is the prerogative of the courts or, in this case, the commission to invoke judicial estoppel in its discretion. *See State v. Fleming,* 181 Wis. 2d 546, 558, 510 N.W.2d 837, 841 (Ct. App. 1993).

Judicial estoppel is a comparatively new name for the old doctrine of "estoppel in pais." *Levinson v. United States,* 969 F.2d 260, 264 (7th Cir.), *cert. denied,* 113 S. Ct. 505 (1992). The first Wisconsin case using the new term appeared in 1987. *See, e.g., State v. Michels,* 141 Wis. 2d 81, 98, 414 N.W.2d 311, 317 (Ct. App. 1987). It has been used with increasing regularity since that time, mostly in criminal appeals where the defendant asserts one position at trial and a contrary position on appeal. *See, e.g., State v. Washington,* 142 Wis. 2d 630, 635, 419 N.W.2d 275, 277 (Ct. App. 1987).

More than thirty cases, published and unpublished, have used the term since *Michels*.

The focus of judicial estoppel is to insure the integrity of the courts. *Fleming*, 181 Wis. 2d at 557, 510 N.W.2d at 841. It is intended "to protect against a litigant playing 'fast and loose' with the courts' [sic] by asserting inconsistent positions." *Id.* (quoted source omitted). The rule looks toward cold manipulation and not unthinking or confused blunder. *Id.* at 558, 510 N.W.2d at 841.

The Seventh Circuit Court of Appeals has stated that although the doctrine is not reducible to a pat formula, there are certain identifiable boundaries. *Levinson*, 969 F.2d at 264. They are: first, the later position must be clearly inconsistent with the earlier position; second, the facts at issue should be the same in both cases; and finally, the party to be estopped must have convinced the first court to adopt its position—a litigant is not forever bound to a losing argument. *Id.* at 264-65.

Obviously, instances where a defendant in a criminal case reverses positions on appeal most often fit these parameters since the facts are the same and it is easier to discern whether the positions are clearly inconsistent. This does not necessarily foreclose the use of judicial estoppel in other situations involving two different legal actions rather than a trial and appeal of the same action. However, the more uncertain we are that the two judicial actions concern the same factual issues or positions, the more hesitant we should be in applying judicial estoppel. Judicial estoppel, after all, is an equitable determination and should

497

be used only when the positions taken are *clearly* inconsistent.

Harrison argues that judicial estoppel is not appropriate in this case precisely because the relevant inquiries concerning incapability to perform a job differ as between an SSI hearing and a hearing under the WFEA. In particular, he notes that following his back surgery he was able to continue his printer/press operator's job because his friends at work did all of the necessary lifting for him when he could not perform the lifting himself. He calls this "an accommodation" made by his coworkers so he could perform the job. He asserts that at the time of the SSI hearing in 1987, prior to the Americans with Disabilities Act, the sole question to be answered was whether he could perform the job without this accommodation or, in his case, whether *he* could lift a certain amount of weight while on the job. He argues that, using this standard, he truthfully testified that he could not perform the job.

Harrison contends that at the state discrimination hearing, on the other hand, the state had long entertained a policy that capability to perform a job included the added factor of whether the job could be performed with an accommodation. Thus, he claims, he answered the state discrimination hearing question truthfully when he said that he was capable of performing the job. This was because he could do so with the accommodation. Harrison reasons that we should not look solely to whether he said he was incapable at one hearing and capable at another hearing, but we should also look to the legal context under which the supposedly contradictory statements were made.

Neither Friends nor LIRC answers for us whether Harrison's understanding of the federal law vis-a-vis the state law is correct. Friends simply complains that

the question of inconsistency is one of fact. It argues that since we are dealing with nothing but factfinding, LIRC's findings are conclusive on the courts. Friends is wrong. What the law was in 1987 regarding the standard of incapability in federal terms under SSI and what the law was relating to incapability under the Wisconsin Fair Employment Act is a question of law. We anticipate Friends would argue that what the law was at the time should not matter since it is up to the fact finder to determine whether Harrison meant his statements to be based upon his understanding of what the federal and the state law was at the time the statements were made. If that is Friends' argument, we decline to adopt it because for judicial estoppel to apply the legal context must be the same and the facts asserted or positions taken must be *clearly* inconsistent.

Our answer to LIRC's contentions brings home the point. LIRC contends that in his application for SSI benefits, Harrison stated that he was disabled from performing any work. In addition, LIRC points to the ALJ's recitation of Harrison's testimony that he "doubted whether he was still physically able to set up or load a large press and believed he could now only run a smaller machine." LIRC argues that these positions are inconsistent with a claim that he could perform the job with an accommodation.

We do not agree because the statements made still beg the question. When Harrison made the statement that he was disabled from performing any work, did he mean even if there was an accommodation? When he testified that he doubted that he was still able to set up or load a large press, did he mean that he doubted he could still set up and load even without an accommodation? In our view, Harrison's statements do not provide

the answers and it would be conjecture to say otherwise. We cannot say that these statements are the smoking guns which prove that Harrison's position at the federal level was inherently inconsistent with his position at the state level.

No one seems to have answered the question that is gnawing at us. In 1987, were benefits under SSI conditioned upon a finding of incapability even if the person could perform the job with an accommodation? In 1990, was an age discrimination claim made under the WFEA, which claim assumes that the person is capable of working, determined in part by whether the person was capable of working with an accommodation? If it turns out that the legal thresholds were the same, then it may well be that the factual statements are "clearly inconsistent" since the facts at issue are the same. If the standards are different, judicial estoppel cannot apply because it cannot be said that Harrison is playing "fast and loose" with the courts.

We will not decide the question of law at this juncture for two reasons. First, the briefs inadequately help us to answer the question. Second, LIRC has the expertise to determine the state of the law in Wisconsin as it existed in 1990 and can use this expertise to compare the law to the federal law as it existed in 1987. We affirm the remand of this record by the circuit court to LIRC limited to the directions presented here. The circuit court ordered that the proceedings be reopened and completed. Presumably, the court was ordering that the case proceed to the merits. We think that is premature and await the determination of the legal questions first. If LIRC determines that judicial estoppel should not apply, it may proceed to the merits. We also affirm the circuit court's denial of an award of

attorney's fees. Harrison's position has a rational basis in law and fact.[1]

*By the Court.*—Order modified and, as modified, affirmed.

---

[1] LIRC alternatively raises collateral estoppel as a means of affirming its decision. The doctrine of collateral estoppel is designed to limit the relitigation of issues that have been contested in a previous action between the same or different parties. *Michelle T. v. Crozier*, 173 Wis. 2d 681, 687, 495 N.W.2d 327, 329 (1993). Because LIRC must still determine whether the issues are the same, we cannot consider collateral estoppel.