STATE of Wisconsin, Plaintiff-Respondent,

v.

Basil E. RYAN, Jr., Defendant-Appellant.†

Court of Appeals

*No. 2009AP3075. Submitted on briefs October 6, 2010.
—Decided January 11, 2011.*

2011 WI App 21

(Also reported in 796 N.W.2d 23.)

† Petition for Review Filed.

On behalf of the defendant-appellant, the cause was submitted on the briefs of *Dan Biersdorf* and *E. Kelly Keady* of *Biersdorf & Associates, S.C.*, of Milwaukee.

On behalf of the plaintiff-respondent, the cause was submitted on the brief of *J.B. Van Hollen*, attorney general, and *Joanne F. Kloppenburg*, assistant attorney general.

Before Curley, P.J., Fine and Brennan, JJ.

¶ 1. CURLEY, P.J. Basil E. Ryan, Jr. appeals a judgment granting the State summary judgment on a forfeiture action in which the State alleged that Ryan unlawfully placed and maintained a sunken barge on the bed of the Menomonee River, contrary to WIS. STAT. §§ 30.12 and 30.10 (2007–08).[2] Ryan argues that summary judgment is unavailable in WIS. STAT. ch. 30 forfeiture actions and that the trial court therefore erred in granting summary judgment. Ryan also argues that the trial court erred in applying the doctrine of judicial estoppel to preclude him from arguing that he did not own or control the barge. We conclude that summary judgment was available for the State's ch. 30 forfeiture action, and that the trial court did not err in applying judicial estoppel in this case. We further conclude that the trial court did not err in granting summary judgment, as there were no issues of material fact and the State was entitled to judgment as a matter of law. We therefore affirm.

[2] All references to the Wisconsin Statutes are to the 2007–08 version unless otherwise noted.

## I. BACKGROUND.

¶ 2. This case originally arose out of an eminent domain action whereby the Wisconsin Department of Transportation ("DOT") acquired real property at 260 North 12th Street in Milwaukee for the construction of the Marquette Interchange. Prior to that action, Ryan owned and operated businesses on the property. Ryan's auto towing business stored over 400 cars there, and his limestone supply business stored spoils.[3] Ryan also moored a spud barge[4] in the Menomonee River adjacent to the property. According to a "Relocation Business Questionnaire" that Ryan submitted to the DOT in March 2005 as part of the eminent domain relocation process, Ryan claimed ownership in the barge. This form stated in part: "barge is stored by owner (Ryan)."

¶ 3. On March 30, 2005, the DOT acquired the property at 260 North 12th Street by filing an award of damages in the Register of Deeds office in Milwaukee County. Ryan was provided a ninety-day assurance of occupancy and notice that his business would be expected to vacate the property by June 28, 2005.

---

[3] As pertinent to this case, WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 2203 (1993) defines "spoil" as: "material (as refuse, earth or rock) excavated usu[ally] in mining, dredging, or excavating" (punctuation added).

[4] A spud barge is a flat-bottomed boat that uses heavy timber or pipe as a means by which to moor. The timber or pipe is located in a well at the bottom of the boat, and acts in the same function as would an anchor. Spud barges are riverboats that are most commonly used as work barges, or as a loading or unloading platform. *See* WEBSTERS THIRD NEW INTERNATIONAL DICTIONARY 176 (1993); *see also* Parilman Associates "Barge Accidents and Information", available at: *http://www.resource4 admiraltylaw.com/topics/bargeaccidents.html#spud.*

¶ 4. After the June 28, 2005 deadline passed and Ryan still had not vacated the property, the DOT petitioned the Milwaukee County circuit court for a writ of assistance against Ryan; specifically, the DOT petitioned against Ryan doing business as "Ryan Marina," as well as a number of Ryan's other business concerns, including: "260 North 12th Street, LLC;" "Ryan Management, LLC;" "B.E. Ryan Enterprises, Inc. doing business as Vehicle Towing;" and "Irish Stone and Rock Co. (Trade Name of B.E. Ryan, Jr.)." Steven K. Puschnig of S&S Auto Sales, and Honeycreek, Inc., were also named as respondents to the writ.[5] The trial court granted the DOT's petition and issued an order for writ of assistance, providing in part:

> [A]ll Respondents will remove all of their personal property, including the barge, and will vacate the premises located at 260 North 12th Street, Milwaukee, Wisconsin, as more particularly described in the attachments to this order on or before August 1, 2005.

¶ 5. Despite this order, the barge was not removed. It remained stationed adjacent to the property at 260 North 12th Street until it sank to the riverbed on July 13, 2006.

¶ 6. The State Department of Natural Resources ("DNR") sent Ryan a notice of violation regarding the sunken barge on October 9, 2006. The notice explained that the DNR had reason to believe that Ryan was in violation of various statutes because the barge obstructed navigable waters. The notice, which was expressly addressed to Ryan, described the barge as "your barge," and further noted that "[a] barge owned by Basil

---

[5] *See State v. 260 N. 12th St., LLC*, No. 05–CV–5593 (Milwaukee County Circuit Court Jul. 1, 2005).

Ryan sunk on July 13, 2006 on the Menomonee River located near 11th and Canal." In a letter dated October 16, 2006, Ryan responded via his then-attorney, stating:

> It is our position that the barge sank only because of the negligence of staff members of WISDOT, or of contractors working under the direction and supervision of WISDOT.
>
> The factual allegations regarding contacts with [Ryan's attorney] are substantially incorrect and, in any event, are not relevant.
>
> With full reservation of the rights of the barge owner, we are nonetheless willing to address the matter by floating and removing the barge, thus eliminating the problem, while still leaving for resolution on another day, both cost placement and responsibility for damage experienced.
>
> To assist us in this regard, we ask for copies of the bids obtained by [the] DNR for floating the barge. In this way we can work with the low bidder to remove the problem.

The barge, however, was not removed. It remained at the bottom of the Menomonee River.

¶ 7. The State consequently filed the instant forfeiture action against Ryan. The complaint alleged, among other things, that Ryan "unlawfully placed and maintained an obstruction in the form of a sunken barge on the bed of the Menomonee River, which is a navigable stream" without a permit, contrary to WIS. STAT. §§ 30.10(2) and 30.12(1)(a).[6] Ryan denied the

---

[6] WISCONSIN STAT. 30.10(2) provides: "[e]xcept as provided under sub. (4)(c) and (d), all streams, sloughs, bayous and marsh outlets, which are navigable in fact for any purpose whatsoever, are declared navigable to the extent that no dam,

complaint allegations in his answer, alleging that the State was in possession of the barge when it sunk.

¶ 8. Shortly thereafter, the State filed its first motion for summary judgment. It argued that it was undisputed that: (1) Ryan owned the barge from at least 2005 until it sunk on July 13, 2006; (2) Ryan never obtained a permit to place or maintain the barge on the riverbed; and (3) the Menomonee River where the barge lies is a natural navigable and public waterway, and no bulkhead had been established where the river abuts the property adjacent to where the barge lies.

¶ 9. The State submitted several documents to establish that Ryan owned the barge. The State included the order for writ of assistance concerning the 2005 eminent domain action, as well as the Business Relocation Questionnaire that stated, "barge is stored by owner (Ryan)." The State also provided the October 16, 2006 letter from Ryan's counsel to the DNR shortly after the barge sunk, which stated:

> With full reservation of the rights of the barge owner, we are nonetheless willing to address the matter by floating and removing the barge, thus eliminating the problem, while still leaving for resolution on another day, both cost placement and responsibility for damage experienced. To assist us in this regard, we ask for copies of the bids obtained by [the] DNR for floating the barge. In this way we can work with the low bidder to remove the problem.

---

bridge or other obstruction shall be made in or over the same without the permission of the state." WISCONSIN STAT. 30.12(1)(a) provides: "[u]nless an individual or a general permit has been issued under this section or authorization has been granted by the legislature, no person may...[d]eposit any material or [] place any structure upon the bed of any navigable water where no bulkhead line has been established."

¶ 10. The State further submitted several affidavits by State DOT employees affirming that when the DOT acquired the real property and other property at 260 North 12th Street, it did *not* acquire the barge. According to those affidavits, the State never acquired or obtained a bill of sale for the barge, and, moreover, it was not part of any of separate or ongoing marina business eligible for relocation benefits from the DOT. The State also submitted affidavits establishing that the DOT determined in October 2004 that Basil Ryan d/b/a Ryan Marina was not in operation—significant because it rendered Ryan ineligible for relocation benefits—and that, as of August 2005, the barge was in disrepair, was overgrown with vegetation, and was filling with water.

¶ 11. In response to the State's first motion for summary judgment, Ryan admitted that the DOT never acquired the barge, but disputed that he personally owned and/or controlled the barge when it sank. Ryan submitted an affidavit alleging that someone else, a person by the name of Richard Schumacher, owned the barge. According to Ryan's affidavit, Ryan's corporation agreed to store the barge for Schumacher, but Ryan never personally owned or controlled the barge in any way. As for the Business Relocation Questionnaire, Ryan's affidavit claimed that Ryan never saw the form, and that his then-attorney prepared it without any input from Ryan and never showed it to him before the State moved for summary judgment. As for the October 16, 2006 letter submitted by his then-attorney, Ryan's affidavit again contended that Ryan was never consulted about the contents of the letter. Ryan's affidavit additionally contended that after the writ of assistance was filed on July 19, 2005, the DOT had control of the barge from that date until it sunk in 2006.

¶ 12. The trial court partially granted the State's first motion for summary judgment. The trial court first determined that there was no issue of material fact with respect to Ryan's assertion that the State was responsible for the barge's sinking. This was because Ryan's affirmative defense could not be established without expert testimony, which he did not proffer. The trial court next determined that the doctrine of judicial estoppel precluded Ryan from denying that he or one of his corporate entities owned and controlled the barge at all pertinent times. According to the trial court, Ryan's assertion that he did *not* own or control the barge was wholly inconsistent with the position he took in the 2005 eminent domain case. Specifically, as a defendant in that case, *State v. 260 N. 12th Street*, No. 05–CV-5593 (Milwaukee County Circuit Court Jul. 1, 2005), Ryan affirmatively asserted his ownership in the barge via the Business Relocation Questionnaire, the letter dated October 16, 2006, and, "most importantly," by agreeing to "entry of an order which specifically determined that the barge was the 'personal property' of Ryan or a Ryan concern." The trial court concluded that "it would be a perversion of the judicial process to allow those incon- sistent assertions and Mr. Ryan is estopped from doing so."

¶ 13. The trial court also denied the State's first motion for summary judgment in part. Specifically, the trial court concluded that the State was not entitled to summary judgment because it did not establish indi- vidual ownership on Ryan's part. While the State did show that either Ryan "or one of the corporate concerns of which he is a principal," owned the barge, the State named only Ryan as a defendant to the forfeiture action. It further determined that "[i]f in fact, it is established that Mr. Ryan is the controlling principal of

the corporate entities (assuming personal ownership cannot be established), [then] Mr. Ryan is liable."

¶ 14. The State then filed a second motion for summary judgment. In this motion, the State argued that because Ryan testified in his deposition for the eminent domain case that the barge was owned by Ryan Marina, one of Ryan's corporate concerns, and because Ryan was the only officer and controlling principal of Ryan Marina, that Ryan was personally liable for the sinking of the barge. The State also noted that Ryan testified that he was storing the barge as of March 30, 2005, and had not leased the barge to anyone for ten years before that.

¶ 15. The trial court granted the State's second motion for summary judgment. The court then held a trial concerning damages, and ordered judgment for payment of forfeitures and surcharges totaling approximately $37,691.25. Additionally, the Court ordered $100,000 to be maintained in a trust account to cover the net cost of the removal of the barge. Ryan now appeals.

## II. ANALYSIS.

*Summary Judgment Standard*

■

¶ 16. We review *de novo* the grant or denial of summary judgment, employing the same methodology as the circuit court. *See Green Spring Farms v. Kersten*, 136 Wis. 2d 304, 314–16, 401 N.W.2d 816 (1987). Summary judgment is appropriate where there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. WIS. STAT. § 802.08(2). The inferences to be drawn from the un-

derlying facts are to be viewed in the light most favorable to the party opposing the motion. *Lambrecht v. Estate of Kaczmarczyk*, 2001 WI 25, ¶ 23, 241 Wis. 2d 804, 623 N.W.2d 751. If there is any reasonable doubt regarding whether there exists a genuine issue of material fact, that doubt must be resolved in favor of the nonmoving party. *Schmidt v. Northern States Power Co.*, 2007 WI 136, ¶ 24, 305 Wis. 2d 538, 742 N.W.2d 294.

¶ 17. Ryan presents two bases for appeal. He argues that summary judgment is inappropriate in WIS. STAT. ch. 30 forfeiture actions, and therefore that summary judgment was not available in this case. Ryan also argues that the trial court incorrectly applied the doctrine of judicial estoppel. We address each in turn.

A. *The trial court did not err in granting the State summary judgment on its* WIS. STAT. *ch. 30 claim against Ryan.*

██

¶ 18. Whether summary judgment is available in this WIS. STAT. ch. 30 forfeiture action is a question of law we review *de novo. See State v. Hyndman*, 170 Wis. 2d 198, 205, 488 N.W.2d 111 (Ct. App. 1992) ("Whether sec. 802.08, Stats. (summary judgment) is applicable to a criminal proceeding via sec. 972.11 is a question of law that this court decides without deference to the trial court.").

¶ 19. WISCONSIN STAT. §§ 23.50 through 23.85 govern the procedural aspects of WIS. STAT. ch. 30 forfeiture actions, which are civil actions. *See* WIS. STAT. § 23.50(1); *State v. Peterson*, 104 Wis. 2d 616, 622 n.7, 312 N.W.2d 784 (1981). Section 23.69 specifically pro-

vides that "[a]ny motion which is capable of determination without the trial of the general issue shall be made before trial." The plain language of this statute would seem to include summary judgment, because, by its very definition, summary judgment disposes of claims when there is nothing to try. *See* WIS. STAT. § 802.08(2) ("The judgment sought shall be rendered if . . . there is no genuine issue as to any material fact and . . . the moving party is entitle to a judgment as a matter of law."); *see also Lodl v. Progressive N. Ins. Co.*, 2002 WI 71, ¶ 16, 253 Wis. 2d 323, 646 N.W.2d 314 (summary judgment seeks to "avoid trials where there is nothing to try") (citation and two sets of quotation marks omitted). Moreover, nowhere in §§ 23.50 through 23.85 is there any procedural bar against summary judgment in ch. 30 forfeiture actions.

¶ 20. Our analysis does not end there, however. This court has established that "the test for the application of the civil rules of procedure" in forfeiture actions "is not only whether the statutes governing the instant proceeding are silent on the matter" or whether they "set out a different procedure, but also whether the instant proceeding can be reconciled with the rules of civil procedure." *State v. Schneck*, 2002 WI App 239, ¶ 7, 257 Wis. 2d 704, 652 N.W.2d 434. We must therefore determine whether summary judgment methodology is consistent with the procedures outlined in WIS. STAT. §§ 23.50 through 23.85. *See Schneck*, 257 Wis. 2d 704, ¶ 7.

¶ 21. As we did in *Schneck*, we begin with the "well-recognized" and "often stated" summary judgment methodology:

> We first examine the complaint to determine whether it states a claim and then review the answer to determine

whether it joins a material issue of fact or law. If we conclude that the complaint and answer are sufficient to join issue, we examine the moving party's affidavits to determine whether they establish a prima facie case for summary judgment. If they do, we look to the opposing party's affidavits to determine whether there are any material facts in dispute that entitle the opposing party to a trial.

*Id.*, ¶ 8.

¶ 22. We next turn to the complaint and answer allowed by WIS. STAT. §§ 23.52 and 23.55. *See Schneck*, 257 Wis. 2d 704, ¶ 10 (comparing summary judgment methodology with procedure in WIS. STAT. ch. 345 forfeiture proceeding). WISCONSIN STAT. § 23.52 provides that forfeiture actions may be commenced by a citation, or—as the State chose to do in the instant case—a complaint and summons." *See id.* WISCONSIN STAT. § 23.55 prescribes the contents of the complaint as well as the summons, which directs the defendant to answer the complaint. Thus, in an instance where a plaintiff initiates a claim via a complaint and summons pursuant to §§ 23.52 and 23.55, the trial court would be able not only to examine the complaint to determine whether it states a claim, but would also be able to evaluate the defendant's answer—written or otherwise—to determine whether it joins an issue of material fact. *See Schneck*, 257 Wis. 2d 704, ¶ 10 (summary judgment for ch. 345 actions inappropriate because "a trial court cannot perform even the rudimentary initial steps of summary judgment methodology because the responses contemplated by [ch. 345] are not the equivalent of an answer in a conventional civil action"). The procedure outlined by §§ 23.52 and 23.55 is therefore consistent with summary judgment.

¶ 23. In addition, in a forfeiture action such as this one, the trial court also has the ability to evaluate not only the complaint and answer, but also the affidavits of both parties to determine whether any issue of material fact exists. *See Schneck*, 257 Wis. 2d 704, ¶ 8. Even though, as Ryan correctly points out, WIS. STAT. § 23.73 prohibits discovery in most forfeiture actions,[7] it does not prohibit the parties from submitting their own affidavits. No statute governing procedure in WIS. STAT. ch. 30 forfeiture actions prohibits this. Indeed, in the instant case, the State and Ryan each submitted several affidavits either in support of or opposing summary judgment. The trial court had ample material to evaluate when determining whether any issue of material fact existed in this case.

¶ 24. We also note that the trial court's decision to grant summary judgment in the instant case was not novel. Our precedent includes numerous examples of instances in which summary judgment was granted in civil enforcement actions. *See, e.g., Oneida Cnty. v. Converse*, 180 Wis. 2d 120, 508 N.W.2d 416 (1993); *State v. Rollfink*, 162 Wis. 2d 121, 475 N.W.2d 575 (1991); *State v. Block Iron & Supply Co.*, 183 Wis. 2d 357, 515 N.W.2d 332 (Ct. App. 1994); *State v. Land Concepts, Ltd.*, 177 Wis. 2d 24, 501 N.W.2d 817 (Ct. App. 1993); *State v. Menard, Inc.*, 121 Wis. 2d 199, 358 N.W.2d 813

---

[7] WISCONSIN STAT. § 23.73 specifically provides: "**Discovery.** Neither party is entitled to pretrial discovery except that if the defendant moves within 10 days after the alleged violation and shows cause therefor, the court may order that the defendant be allowed to inspect and test under such conditions as the court prescribes, any devices used by the plaintiff to determine whether a violation has been committed and may inspect the reports of experts relating to those devices."

(Ct. App. 1984). Indeed, one such case was a WIS. STAT. ch. 30 enforcement action. *See State v. Kelley*, 2001 WI 84, 244 Wis. 2d 777, 629 N.W.2d 601. While the issue in *Kelley* differs from the one before us—in that case the parties expressly agreed to allow the court to decide the legal issues via summary judgment, *see id.*, ¶ 17—it shows that, contrary to what Ryan argues, the use of summary judgment in ch. 30 enforcement actions has been contemplated as well as utilized, and is not too drastic a procedure, especially in a case like this one where the trial court has the necessary information to determine whether an issue of fact exists.

¶ 25. Therefore, because the plain language of the procedural statutes governing WIS. STAT. ch. 30 forfeiture actions allows for summary judgment, and because these statutes are consistent with summary judgment methodology, we conclude that summary judgment was available in the State's ch. 30 forfeiture action against Ryan, and that the trial court did not err in allowing the State to move for summary judgment.

*B. The trial court did not err in applying judicial estoppel to preclude Ryan from arguing that he did not own or control the barge.*

¶ 26. " 'Judicial estoppel is a doctrine that is aimed at preventing a party from manipulating the judiciary as an institution by asserting a position in a legal proceeding and then [later] taking an inconsistent position.' " *State v. White*, 2008 WI App 96, ¶ 15, 312 Wis. 2d 799, 754 N.W.2d 214 (citation omitted). "The focus of judicial estoppel is to [e]nsure the integrity of the courts." *Harrison v. LIRC*, 187 Wis. 2d 491, 497, 523

N.W.2d 138 (Ct. App. 1994). It is intended to protect against a litigant playing "fast and loose" with the courts by asserting inconsistent positions. *Id.* (quotation marks and citation omitted); *see also Salveson v. Douglas Cnty.*, 2001 WI 100, ¶ 37, 245 Wis. 2d 497, 630 N.W.2d 182. "The rule looks toward cold manipulation and not [an] unthinking or confused blunder." *Harrison*, 187 Wis. 2d at 497. The doctrine requires a showing that: "(1) a party against whom estoppel is sought presents a later position that is clearly inconsistent with the earlier position; (2) the facts at issue are the same in both cases; and (3) the party to be estopped convinced the first court to adopt its position." *White*, 312 Wis. 2d 799, ¶ 15 (citation omitted). "Because judicial estoppel is not directed to the relationship between the parties, but is intended to protect the judiciary as an institution from the perversion of judicial machinery, it is the prerogative of the trial court to invoke judicial estoppel at its discretion." *State v. Fleming*, 181 Wis. 2d 546, 558, 510 N.W.2d 837 (Ct. App. 1993) (internal citation omitted). Whether these elements are met is a question of law that we review *de novo. White*, 312 Wis. 2d 799, ¶ 15.

¶ 27. We think that Ryan presents a textbook example of a litigant playing "fast and loose" with the judicial system. *See Harrison*, 187 Wis. 2d at 497; *Salveson*, 245 Wis. 2d 497, ¶ 37. First, in the eminent domain action that resulted in the writ of assistance, Ryan held himself out as the equitable owner of the barge. The "Relocation Business Questionnaire" that Ryan submitted to the DOT in March 2005 as part of the eminent domain relocation process expressly stated that Ryan owned the barge. We note that this form states: "barge is stored by owner (Ryan)." It lists no

other owner. This position, that Ryan (or one of his corporate concerns) owned the barge, is clearly inconsistent with his present, unsubstantiated contention that at all pertinent times *someone else* owned the barge.[8] We do not find persuasive Ryan's unsubstantiated contention that because Ryan's assertions of ownership did not take place within a motion or brief or other filing directly related to the civil litigation process that they do not amount to "positions." *See State v. Pettit*, 171 Wis. 2d 627, 646, 492 N.W.2d 633 (Ct. App. 1992) (court of appeals may decline to review inadequately developed arguments). Second, the facts at issue in the instant case, whether Ryan and/or one of his corporate concerns is responsible for relocating the barge as part of the Marquette Interchange project, are the same. Third, we conclude that the trial court was convinced that Ryan was the owner of the barge in the former case. The trial court expressly found that the

---

[8] In support of his contention that someone else, namely, Richard J. Schumacher, owned the barge during all pertinent times, Ryan submits three pieces of information: (1) an affidavit by Ryan affirming that he (Ryan) never owned the barge; (2) a Certificate of Documentation issued April 11, 1996—and expiring April 30, 1997—showing that "Ko-op Marine, Inc." registered a vessel by the name of "Chippewa" whose dimensions, 139.5 feet by 35.0 feet, were similar to those of the barge at issue in this case (approximately 100 by 30 feet); and (3) a printout from the Wisconsin Department of Financial Institutions webpage showing that Richard J. Schumacher is the registered agent for "Ko-op Marine, Inc." We fail to understand how these three disparate pieces of information show that Schumacher owned the barge during the times at issue in this case, and we will not consider Ryan's argument. *See State v. Pettit*, 171 Wis. 2d 627, 646, 492 N.W.2d 633 (Ct. App. 1992) (court of appeals may decline to review inadequately developed arguments).

parties in the first litigation agreed to "an entry of an order which specifically determined that the barge was the 'personal property' of Ryan or a Ryan concern." Indeed, the trial court in the instant case was in a very good position to evaluate whether the court in the first case had relied on the fact that Ryan was the equitable owner of the barge in issuing the writ because that same judge presided over both cases. For his part, Ryan does not show that he took any affirmative steps whatsoever to present any facts to the contrary until November 2008, three years after the court issued the writ ordering him to relocate the barge. Moreover, Ryan has not shown that the inconsistent positions he took in the former case were due to any inadvertence or mistake. *See Harrison*, 187 Wis. 2d at 497. We will not consider the documents Ryan submits to prove that someone else owned the barge because they are highly suspect and because Ryan does not explain how they establish Schumacher's ownership. *See* footnote 8, *infra; see also Pettit*, 171 Wis. 2d at 646. We therefore conclude that the elements of judicial estoppel have been satisfied and that the trial court's decision to apply the doctrine to preclude Ryan from arguing that the barge was not under his control was not in error.

¶ 28. Furthermore, Ryan's argument that "estoppel can only be applied where the first case has an equal or higher standard of proof" does not apply to the doctrine of judicial estoppel. Ryan's cited cases for this contention pertain only to the doctrines of issue and claim preclusion, and have no bearing on the instant case. Judicial estoppel binds a party to a position previously taken by that same party, *see White*, 312 Wis. 2d 799, ¶ 15, whereas claim preclusion and issue preclusion bind a court to a position previously taken by that court, *see Wickenhauser v. Lehtinen*, 2007 WI 82,

¶ 22, 302 Wis. 2d 41, 734 N.W.2d 855; *see also Precision Erecting, Inc. v. M&I Marshall & Ilsley Bank*, 224 Wis. 2d 288, 301–02, 592 N.W.2d 5 (Ct. App. 1998). Any difference between the burden of proof in the eminent domain case and the instant case is irrelevant.

C. *Summary judgment regarding liability was appropriate as a matter of law.*

¶ 29. After the trial court granted the State's first summary judgment motion in part, the State filed a second motion for summary judgment, this time arguing that because Ryan testified in his deposition that the barge was owned by Ryan Marina, one of Ryan's corporate concerns, and because Ryan was the only officer and controlling principal of Ryan Marina, that Ryan was personally liable for the sinking of the barge. Between the two motions, the State thus established all of the elements necessary to succeed on its WIS. STAT. §§ 30.10(2) and 30.12(1)(a) claims. Ryan did not, and has not, set forth any issues of material fact. Based on our *de novo* review of the facts and issues in this case, we agree that the State established its WIS. STAT. ch. 30 claims as a matter of law. We therefore affirm both motions for summary judgment.

*By the Court.*—Judgment affirmed.