IN RE the PATERNITY OF JEREMY D.L.:

STATE of Wisconsin, Petitioner-Appellant,

v.

MARK A., Respondent-Respondent.†

Court of Appeals

*No. 92–1899. Submitted on briefs April 1, 1993.—Decided June 2, 1993.*

(Also reported in 503 N.W.2d 275.)

†Petition to review denied.

552

On behalf of petitioner-appellant, the cause was submitted on the briefs of *Robert H. Owen* of Middleton.

On behalf of respondent-respondent, the cause was submitted on the brief of *Stephen D. Willett* of *Willett & Klein, S.C.* of Phillips.

Before Cane, P.J., LaRocque and Myse, JJ.

LaROCQUE, J. The state appeals a judgment dismissing its paternity action against Mark A. entered upon a jury verdict finding that he was not the father of Jodi L.'s son. The state alleges trial court error in refusing to grant a default judgment, denying its motion for a bench trial rather than a jury trial and admitting evidence of Jodi's sexual intercourse with

males excluded from paternity by genetic testing. We conclude that any error in refusing to grant a default judgment was harmless, and that Mark was entitled to a jury trial. However, sec. 767.48(4), Stats., bars testimony of the mother's sexual intercourse with excluded males, and we reverse and remand for a new trial. We need not address the remaining issues raised by the state.[1]

The evidence at trial established that Jodi gave birth to a full-term eight pound, ten ounce son on July 9, 1987. The parties agreed that the conception period extended from September 11 to November 10, 1986.[2] Over the state's objection, Jodi admitted to sexual intercourse with three males during this conception period, the respondent Mark, and two men excluded from paternity by HLA blood tests, Russell and John. Jodi also acknowledged that after these acts of intercourse, on two visits to a public health service and one to her physician in October 1986, she reported that she had recently had sexual intercourse only with Russell. Jodi made this report even though she had learned that

---

[1] The state also seeks a new trial on grounds of newly-discovered evidence and in the interest of justice. Because we reverse on other grounds, we need not address these issues.

[2] Section 891.395, Stats., provides:

> In any paternity proceeding, in the absence of a valid birth certificate indicating the birth weight, the mother shall be competent to testify as to the birth weight of the child whose paternity is at issue, and where the child whose paternity is at issue weighed 5½ pounds or more at the time of its birth, the testimony of the mother as to the weight shall be presumptive evidence that the child was a full term child, unless competent evidence to the contrary is presented to the court. The conception of the child shall be presumed to have occurred within a span of time extending from 240 days to 300 days before the date of its birth, unless competent evidence to the contrary is presented to the court.

she was pregnant and that she had contracted chlamydia, a venereal disease, and that it was important that she name all of her sex partners.

Then in August 1987, shortly after Jodi gave birth, during a paternity inquiry by the Price County Child Support Agency she named only Russell and John as persons with whom she had sexual intercourse during the conceptive period. Jodi ultimately named Mark as a potential father in 1991. Mark denies ever having had sexual intercourse with Jodi.

## DENIAL OF DEFAULT JUDGMENT

The trial court denied the state's motion for a default judgment brought pursuant to sec. 767.465(2), Stats., when Mark failed to personally appear at pretrial proceedings. Mark appeared by counsel.[3] Wisconsin's paternity statutes were comprehensively revised by ch. 352, 1979 Wis. Laws, effective July 1, 1981.[4] Among the revisions, the legislature adopted sec. 767.465, which provides in part:

> (2) . . . If a respondent is the alleged father and fails to appear at the first appearance . . . scheduled blood test, pretrial hearing or trial, the court . . . shall enter an order adjudicating the respondent

[3] We summarily reject Mark's unsupported claim that art. I, § 21(2) of the Wisconsin Constitution declares his right to absent himself from judicial proceedings. Section 21(2) provides that "In any court of this state, any suitor may prosecute or defend his suit either in his own proper person or by an attorney of the suitor's choice." This constitutional right to prosecute or defend by an attorney does not suggest a right to refuse to be personally present when legislatively or judicially required.

[4] Section 767.46, Stats., provides for a "pretrial hearing" wherein the parties may present and cross-examine witnesses, replacing the former "preliminary hearing."

to be the father and appropriate orders for support, legal custody and physical placement.

This court recently affirmed the entry of a default judgment based upon this legislation. *In re Tiffany B.*, 173 Wis. 2d 864, 496 N.W.2d 711 (Ct. App. Jan. 20, 1993). In *Tiffany B.*, the accused appeared at trial only through counsel. We concluded that the statute was not ambiguous, and upheld the default judgment adjudicating paternity. We did not discuss whether under proper circumstances the trial court could refuse to grant a default.

■

We conclude that even if the statute contemplates a mandatory default in all cases, the provisions of sec. 767.465(3), Stats., coupled with the surrounding circumstances of this case, render any error in denying the default harmless.

Section 767.465(3), Stats.,[5] provides:

A default judgment rendered under this section which adjudicates a person to be the father of a child may be reopened:

(a) At any time upon motion or petition for good cause shown.

(b) Upon a motion under s. 806.07.

(c) *Within one year after the judgment upon motion or petition*, except that a respondent may not reopen more than one default judgment on a particular case under this paragraph. (Emphasis added.)

Section 767.465(3)(c), Stats., allows the judgment to be reopened with no showing of good cause. The

---

[5] Subsection (3)(c) was created by 2137p, 1987 Wis. Act 27, effective October 1, 1987. It was amended by 17, 1989 Wis. Act 212, effective April 28, 1990, to provide relief under its provisions only one time.

statute is unambiguous in this respect. Even if it were not, resort to the legislative history would compel the same conclusion.[6] Thus, even if the law mandates a default judgment, subsec. (3)(c) effectively gives the respondent in a paternity action one year to reopen the default without the necessity of showing a good reason for his failure to appear.[7] The effect of the court's action here was to reach the same result without the empty process of granting and then reopening the judgment. If denial of a default was error, it was harmless.

---

[6] Governor Thompson's veto message is evidence of a statute's meaning. *In re C.A.S.*, 156 Wis. 2d 446, 460, 456 N.W.2d 899, 904 (Ct. App. 1990). The governor's veto message concerning 1987 Wis. Act 27 states:

> This section creates an additional opportunity for reopening a paternity determination case in which the respondent has been adjudicated to be the father as result of a failure to appear for the initial appearance. I am making a partial veto to strike the conditions regarding the results of the respondent's blood test.

> The intent of many of the budget's changes to state law on the issue of paternity determination was to reflect in law the improvement of the scientific accuracy of blood tests. While I support this effort to strengthen the law, this section does not provide a sufficient opportunity for a respondent to reopen the case based on the blood test results. My veto expands this opportunity to allow reopening of the case within one year for *all respondents* found in default. (Emphasis added.)

The governor vetoed the clause in the proposed sec. 767.465(3)(c) that read: "unless the respondent has previously undergone a blood test or blood tests that show that the respondent is not excluded and that the statistical probability of the respondent's parentage is 92.0% or higher."

[7] This appeal does not present the question whether a petitioner in a paternity action can successfully oppose a motion to reopen under subsec. (3)(c) for equitable reasons such as fraud or estoppel. Mark's discovery deposition and blood tests were already taken, and the state makes no claim of prejudice.

## RIGHT TO A JURY TRIAL

The state challenges the trial court's decision to try the matter to a jury in view of Mark's failure to comply with the provisions of sec. 767.50(1), Stats., which provides in relevant part:

> The trial shall be divided into 2 parts. The first part shall deal with the determination of paternity. . . . At the first part of the trial, the main issue shall be whether the alleged or presumed father is or is not the father of the mother's child . . . . The first part of the trial shall be by jury only if the defendant verbally requests a jury trial either at the initial appearance or pretrial hearing or requests a jury trial in writing prior to the pretrial hearing.

After the pretrial was held in January 1991, the state moved for a bench trial on grounds that Mark failed to comply with the statute. In response, Mark's counsel filed an affidavit stating that prior to the pretrial, at the scheduling conference on December 13, 1991: "Judge Fox asked if there was going to be a trial in this matter and schedule it as a jury trial pursuant to my request." The affidavit incorporated Judge Fox's written "NOTICE TO PARTIES OF: (X) JURY TRIAL," dated December 13, 1991, and sent to the parties.

The state presented an affidavit of the child support agency director who was at the pretrial. She stated that she had no recollection of a jury demand, and her affidavit incorporates the court reporter's transcript of the December 13 hearing that does not disclose a demand for jury on the record.

Judge Fox conducted the pretrial hearing in January as scheduled, and the state did not raise the issue of the notice of jury trial. Thus, the trial court neither

resolved the factual issue raised in the competing affidavits, nor did Mark's counsel make further mention of a jury.

We conclude that the written notice of jury trial prior to the pretrial constitutes a sufficient basis to support the trial court's decision to try the case to a jury. The state's failure to object to the notice at or before the pretrial constitutes a waiver. The defense' reliance upon the notice to its detriment estops the state from objecting for the first time after it was too late for a formal jury demand. Further, the competing affidavits raise a factual issue whether a proper verbal demand for a jury was made but not recorded. This court may affirm if the trial court reaches a result that the evidence would sustain if a specific finding supporting that result had been made. *Moonen v. Moonen*, 39 Wis. 2d 640, 646, 159 N.W.2d 720, 723 (1968).

## EXCLUSION OF EVIDENCE UNDER SEC. 767.48(4), STATS.

Over the state's objection based upon sec. 767.48(4), Stats., the court allowed cross-examination of Jodi that disclosed that she had sexual intercourse during the conceptive period with Russell and John despite the fact that the state's expert witness established without contradiction that these two men were eliminated from paternity by HLA blood testing.

Section 767.48(4), Stats., provides in part:

> Whenever the results of the [blood] tests exclude any male witness from possible paternity, the tests shall be conclusive evidence of nonpaternity of the male witness. Testimony relating to sexual intercourse or possible sexual intercourse of the mother with any person excluded as a possible

father, as a result of a blood test, is inadmissable as evidence.

Statutory interpretation is a question of law that appellate courts review independently of the trial court's conclusion. *State v. Wittrock*, 119 Wis. 2d 664, 669, 350 N.W.2d 647, 650 (1984). To determine legislative intent, we first look to the language of the statute itself, and, if it is clear on its face, the inquiry ends. Only if the statute is ambiguous will we examine extrinsic evidence of legislative intent. *In re J.W.T.*, 159 Wis. 2d 754, 761, 465 N.W.2d 520, 523 (Ct. App. 1990). A statute is ambiguous if it is capable of being understood by a reasonably well-informed person in either of two senses. *Robinson v. Kunach*, 76 Wis. 2d 436, 444, 251 N.W.2d 449, 452 (1977). Appellate courts should construe statutes in a way as to avoid absurd or unreasonable results. *Voss v. Middleton*, 162 Wis. 2d 737, 749-50, 470 N.W.2d 625, 629-30 (1991).

Despite the unambiguous terms of the statute, the trial court admitted the evidence on the basis of its reading of *In re M.A.V.*, 149 Wis. 2d 548, 439 N.W.2d 829 (Ct. App. 1989). In *M.A.V.*, the mother had intercourse with four males within the conceptive period, all of whom were eliminated by blood test except the respondent. *M.A.V.* held that it was error to permit the mother to testify that she had intercourse only with the respondent during the conceptive period. We concluded that the integrity of the judicial process is compromised when a witness under oath is authorized or even instructed to give answers that are untruthful. *Id.* at 550, 439 N.W.2d at 831.

*M.A.V.*, however, does not hold that evidence of sexual intercourse with excluded males is admissible. To the contrary, *M.A.V.* states: "Given the irrelevance

of intercourse with males excluded by testing, the district attorney was restricted to inquiry about persons not eliminated." *Id.* at 550, 439 N.W.2d at 831. There can be no question that the statute intends to similarly restrict the accused.

## EVIDENCE OF JODI'S ADMISSIONS

While we agree with the state's contention that the statute bars testimony about the mother's sexual intercourse with excluded males, on remand, Mark is entitled to establish that on several occasions she did not name him as a person with whom she had intercourse. Jodi's admissions in this respect do not violate the bar to testimony regarding other excluded males. Even if testimony concerning Jodi's admissions were to fall within the ban of the statute, exclusion of this evidence would render the statute unconstitutional as applied. Even though a statute is constitutional on its face,[8] it may be unconstitutional as applied. *State v. Pulizzano*, 155 Wis. 2d 633, 646-48, 456 N.W.2d 325, 330-31 (1990).

Jodi's admissions that she excluded Mark as a sex partner in out-of-court statements are directly relevant to whether he had intercourse with her. In addition, her statements to that effect may be relevant to the weight to be accorded the testimony of the state's expert. That witness apparently arrived at a

---

[8] We need not address any claim that the statute is facially unconstitutional. A party is foreclosed from challenging the validity of a statute unless the attorney general is given an opportunity to appear before the court and defend the law as constitutionally proper. *Kurtz v. City of Waukesha*, 91 Wis. 2d 103, 117, 280 N.W.2d 757, 764-65 (1979). There was no notice to the attorney general in this case.

probability of paternity of 99.96% based in part upon a 50% random chance that Mark and Jodi had sexual intercourse during the conceptive period. As noted in the pattern jury instruction that was given in the trial of this matter, Wis J I—Civil 5001, the jury must resolve the conflict that arises where there is evidence from which the jury may believe the respondent is not the father and the presumption that arises from the statistical probability of paternity.

The judgment dismissing the paternity petition is reversed and the matter remanded to the trial court for a new trial.

*By the Court.*—Judgment reversed and cause remanded for a new trial.