In the MATTER OF SANCTIONS IN: William FEERICK, Plaintiff, v. MATRIX MOVING SYSTEMS, INC., Defendant.

GATZKE & RUPPELT, S.C., Appellant,

v.

William FEERICK, Respondent.

Court of Appeals

*No. 2006AP776. Submitted on briefs February 6, 2007. —Decided April 10, 2007.*

2007 WI App 143

(Also reported in 736 N.W.2d 172.)

On behalf of the appellant, the cause was submitted on the briefs of *Monte E. Weiss* and *Charles W. Kramer* of *Deutch & Weiss, LLC*, of Milwaukee.

On behalf of the respondent, the cause was submitted on the brief of *Edward R. Harness* of *Harness Law Offices, LLC*, of Milwaukee.

Before Fine, Curley and Kessler, JJ.

¶ 1. CURLEY, J. Gatzke & Ruppelt, S.C. appeals from an order finding it in contempt of court and ordering it to pay an arbitration award, fees and sanctions, as well as from the underlying order for confirmation of the arbitration award. This appeal arises out of a lawsuit in which Matrix Moving Systems, Inc. (Matrix) was sued by William Feerick. The law firm of Gatzke & Ruppelt represented Matrix. That dispute was arbitrated and resulted in an arbitration award against Matrix. Gatzke & Ruppelt twice stated that Matrix had tendered the amount of the arbitration award into its client trust account; however, after the trial court issued the order for confirmation of the arbitration award, Gatzke & Ruppelt said it never received the money. The court determined that Gatzke & Ruppelt was judicially estopped from claiming that it did not have the money, found the law firm in contempt

for failure to pay, and ordered it to pay the arbitration award as well as attorney's fees, interest and sanctions.

¶ 2. Gatzke & Ruppelt contends that the trial court erred in applying the doctrine of judicial estoppel, erred in imposing sanctions, and should have granted it relief. We conclude that the trial court erred in determining that Gatzke & Ruppelt was judicially estopped from stating that Matrix had failed to transfer the arbitration award into its trust account, and, as a result, erred in finding Gatzke & Ruppelt in contempt and in ordering sanctions against the firm. We therefore reverse the order for contempt, and the order to pay the arbitration award, fees and sanctions. Further, because the factual issue of whether Matrix ever paid Gatzke & Ruppelt was never resolved, we remand the matter for an evidentiary hearing.

### I. BACKGROUND.

¶ 3. In 2002, William and Georgellen Feerick entered into a contract with Matrix, a moving service, to move their belongings from Brown Deer, Wisconsin to Hernando, Florida. A dispute arose between Matrix and the Feericks over the amount the Feericks owed Matrix for the move, and William Feerick sued Matrix, alleging that Matrix had charged them $15,456.44 more than previously agreed to. Matrix retained the law firm of Gatzke & Ruppelt to represent it in the dispute. The parties agreed to arbitrate the matter, and an arbitration hearing, conducted by a Better Business Bureau arbitrator, was held on March 29, 2005. The arbitrator rendered a decision in favor of Feerick and awarded him $15,456.44 and $6,652.37 in attorney's fees.

¶ 4. Gatzke & Ruppelt, on behalf of Matrix, sought clarification of the decision but was dissatisfied with the clarification it received. James Gatzke, of

468

Gatzke & Ruppelt, informed Feerick by letter dated April 29, 2005, that Matrix would request judicial review in federal court of the arbitrator's decision and seek to have the award set aside on grounds that the decision was inconsistent with the relevant law and reflected the arbitrator's unfamiliarity with the law.[1] The letter further explained that Matrix "will not pay the award suggested by the arbitrator," but also stated:

> As a measure of good faith, Matrix has, however, deposited the amount of the award in the trust account of Gatzke & Ruppelt, S.C., where it is intended to be held until such time as the Court makes a competent and just determination as to any damages due and owing either party in this matter.

¶ 5.   Whether Gatzke's representation in the letter that the amount of the award had been deposited into Gatzke & Ruppelt's trust account was true, is a disputed issue on appeal. Gatzke & Ruppelt has since filed affidavits indicating that the information was incorrect, and the result of a conversation between Gatzke and one of Gatzke & Ruppelt's associate attorneys, Basil Loeb, where Loeb indicated to Gatzke, based on a statement from Matrix, that Matrix *would be* depositing the amount into the account, and Gatzke mistakenly understood it to mean that it already *had been* deposited. Apparently the same information was also represented on an internal memorandum at Gatzke & Ruppelt. Soon after Loeb's conversation with Gatzke, Loeb left Gatzke & Ruppelt and another associate attorney, Chad Levanetz, took over the case.

¶ 6.   On June 30, 2005, Feerick filed a complaint requesting confirmation of the arbitration award. Matrix filed an answer on August 12, 2005. On December

---

[1] No such action was sought, however.

6, 2005, Matrix, through Levanetz, filed a supplemental brief opposing confirmation of the arbitration award. Levanetz stated in the background section of the brief that Matrix had deposited the amount of the award into Gatzke & Ruppelt's trust account. According to a later affidavit, Levanetz included the sentence in the background section based entirely on the information contained in Gatzke's April 29, 2005 letter and was unaware that the information in it was incorrect.

¶ 7.  On December 19, 2005, the trial court confirmed the arbitration award, and on December 20, 2005, Feerick's attorneys submitted a proposed order to the trial court. Gatzke & Ruppelt did not object to the proposed order. According to Gatzke & Ruppelt, it was at this time that it discovered that the funds were not in its trust account. Feerick does not dispute that Gatzke then informed Feerick's counsel that the funds were not in Gatzke & Ruppelt's possession. Gatzke & Ruppelt withdrew as counsel for Matrix, and Matrix retained the law firm of Hinshaw & Culbertson, LLP, to represent it. On January 6, 2006, consistent with the proposed order from December 20, 2005, the trial court issued an order for confirmation of the arbitration award and ordered Gatzke & Ruppelt to release the funds. Gatzke informed Hinshaw & Culbertson that Matrix had not paid Gatzke & Ruppelt the arbitration award.

¶ 8.  On February 2, 2006, Feerick filed a motion for civil contempt against Matrix and Gatzke & Ruppelt, requesting that Gatzke & Ruppelt be ordered to immediately release the arbitration award. On February 10, 2006, Matrix, through Hinshaw & Culbertson, filed a motion opposing Feerick's motion for contempt with respect to Matrix on grounds that Matrix had

tendered the full amount of the arbitration award to Gatzke & Ruppelt to be held in Gatzke & Ruppelt's trust account.

¶ 9. At a hearing on the contempt motion, Matrix's counsel insisted that Matrix had "tendered the whole amount of the arbitration award to the Gatzke and Ruppelt firm to be deposited in its client trust account." As support, Matrix's attorneys cited Gatzke's April 29, 2005 letter, as well as Levanetz's December 6, 2005 supplemental brief that referenced the presence of the funds in the account and argued that Gatzke & Ruppelt should be judicially estopped from claiming otherwise. Matrix's attorneys also presented the court with an unsigned affidavit[2] from Kevin Rude of Matrix that provided in part:

> 5. Mr. Gatzke requested that Matrix deposit the full amount of the arbitration award in his firm's client trust account, as a show of good faith, pending the outcome of his challenge to the BBB's decision.

> 6. As confirmed in Mr. Gatzke's correspondence to Mr. Harness of April 29, 2005, as well as the representations made by Attorney Chad Levanetz in Defendant's Supplemental Brief, filed December 6, 2005, Matrix tendered the full amount of the arbitration award to Mr. Gatzke for deposit in the Gatzke & Ruppelt, S.C. client trust account.

¶ 10. Gatzke & Ruppelt, represented in court by another associate attorney, stated that the firm never received the funds from Matrix. As support, it presented affidavits from Gatzke, Loeb and Levanetz explaining that Gatzke & Ruppelt's previous representations in the April 29, 2005 letter and the December 6,

---

[2] A signed version of the affidavit was later submitted to the court.

2005 brief, that the firm had received the funds, were not true. The affidavits explained that the incorrect representations were due to a miscommunication between Gatzke and Loeb and an incorrect internal memorandum, and that after Loeb left the firm, the mistake was simply perpetuated by Levanetz.

¶ 11. The trial court determined that because it and the other parties "relied" on the representations in the April 29, 2005 letter and the December 6, 2005 supplemental brief, Gatzke & Ruppelt was judicially estopped from denying that it had the funds in its possession, and emphasized that Gatzke & Ruppelt had failed to object to the proposed order for the confirmation of the award. The court found Gatzke & Ruppelt in contempt for failure to turn over the money and determined that Gatzke & Ruppelt should pay the entire arbitration award and attorney's fees associated with it, $22,109.11, reasonable attorney's fees and post-judgment interest for the contempt motion, as well as an additional $1,000 for every day the firm fails to pay after the order is entered. The court did not find Matrix in contempt.

¶ 12. Gatzke & Ruppelt, now represented by counsel, filed a motion for reconsideration of the contempt finding, to stay the proceedings pending appeal, and for permission to pay the funds into the court. The motion was heard on March 7, 2006. Gatzke & Ruppelt asserted that judicial estoppel was erroneously applied because the firm was only trying to correct a mistake, and requested an evidentiary hearing because the question of where the money was had yet to be resolved. Matrix opposed the motion, claiming that the court did not need to solve the disputed question of fact and insisted instead that because Gatzke & Ruppelt made multiple representations to the court that the firm had

the money, Gatzke & Ruppelt waived its opportunity to argue that an evidentiary hearing was necessary. Gatzke & Ruppelt responded that Matrix's defense was unconvincing because, rather than argue that it paid the money, it is arguing waiver. Gatzke & Ruppelt also told the court that it was, in any event, impossible for it to comply with the order because the order required Gatzke & Ruppelt to pay the money from the trust account and there was no money from Matrix in the trust account.

¶ 13.   The court affirmed its decision that judicial estoppel barred Gatzke & Ruppelt from asserting that it did not have the funds in its trust account. The court noted that although judicial estoppel does not apply when a position is taken due to mistake, this situation did not involve a mistake and fit one of three scenarios: the representations were true, Gatzke & Ruppelt knew they were true, and tried to convert the money; the representations were not true, Gatzke & Ruppelt knew they were not true, and the firm simply did not have the money; or the representations were not true, and the firm took no steps to find out whether they were true or not. The court again saw it as significant that Gatzke & Ruppelt did not object to the proposed order for confirmation of the arbitration award and emphasized the court's and the parties' "reliance" on the firm's representations. The court thus reaffirmed its finding of contempt against Gatzke & Ruppelt. The court denied the request for an evidentiary hearing on grounds that the firm had waived its right to request one, denied the request for a stay and denied the request to pay the money to the court. The court also explicitly stated that Gatzke & Ruppelt, rather than Matrix, should bear the burden because they made the representations. The

court did, however, modify the order to allow Gatzke & Ruppelt to pay Feerick from any account, rather than only the trust account.

¶ 14. On March 17, 2006, a written order was issued finding Gatzke & Ruppelt in contempt and ordering it to pay the $22,199.11 for the arbitration award and the attorney's fees, $443.98 in post-judgment interest, $2,184 in reasonable attorney's fees, and $1,000 per day if it failed to pay those amounts. This appeal follows.

## II. ANALYSIS.

¶ 15. Gatzke & Ruppelt contends that the trial court erred in concluding that the doctrine of judicial estoppel barred it from denying that it had the money in its trust account.

¶ 16. Judicial estoppel is an equitable doctrine intended "to protect against a litigant playing 'fast and loose with the courts' by asserting inconsistent positions." *State v. Petty*, 201 Wis. 2d 337, 347, 548 N.W.2d 817 (1996) (citation and one set of quotations omitted). The doctrine " 'is not directed to the relationship between the parties, but is intended to protect the judiciary as an institution from the perversion of judicial machinery.' " *Id.* at 346 (citation omitted). Thus, "[b]ecause the rule looks toward cold manipulation and not unthinking or confused blunder, it has never been applied where [the] assertions were based on fraud, inadvertence, or mistake." *State v. Fleming*, 181 Wis. 2d 546, 558, 510 N.W.2d 837 (Ct. App. 1993) (citation and quotations omitted).

¶ 17. For judicial estoppel to apply, three elements must exist:

474

First, the later position must be clearly inconsistent with the earlier position; second, the facts at issue should be the same in both cases; and finally, the party to be estopped must have convinced the first court to adopt its positiona litigant is not forever bound to a losing argument.

*Petty,* 201 Wis. 2d at 348 (citation omitted).[3] Whether the elements of judicial estoppel have been met is a question of law that this court reviews *de novo. Salveson v. Douglas County,* 2001 WI 100, 38, 245 Wis. 2d 497, 630 N.W.2d 182.

¶ 18. Gatzke & Ruppelt contends that the trial court erred in applying judicial estoppel because the three elements of judicial estoppel were not present. Gatzke & Ruppelt argues that rather than the "cold manipulation" required for judicial estoppel, this is a case

---

[3] Judicial estoppel has most often been properly invoked in criminal cases where the defendant makes an argument on appeal that is inconsistent with the argument made at the trial court level. *Harrison v. LIRC,* 187 Wis. 2d 491, 496, 523 N.W.2d 138 (Ct. App. 1994); *see, e.g., State v. Edwardsen,* 146 Wis. 2d 198, 209–10, 430 N.W.2d 604 (Ct. App. 1988); *State v. Hardwick,* 144 Wis. 2d 54, 61, 422 N.W.2d 922 (Ct. App. 1988). Judicial estoppel has also been raised in a state discrimination action when a person alleged that he was capable of performing his job, when he had stated before a federal administrative law judge in disability proceedings that he was incapable of performing his job, *Harrison,* 187 Wis. 2d at 493–96, 499–500 (judicial estoppel inapplicable because statements not "clearly inconsistent" since record did not establish whether definition of "capable" under each action included option of working with accommodations), and where a person failed to disclose the existence of a promissory note during divorce proceedings and later tried to collect on the note, *Coconate v. Schwanz,* 165 Wis. 2d 226, 231, 477 N.W.2d 74 (Ct. App. 1991) (failure to list a note was not clearly inconsistent with an assertion that the note was valid and enforceable).

475

of a simple mistake caused by attorney turnover at the firm. Feerick disagrees and asserts that judicial estoppel was properly applied:

> Appellant maintained a position to the Trial Court for approximately nine (9) months that funds were held in its trust account to meet an obligation of an arbitration award. Appellant convinced the Trial Court of this position to the extent that the Trial Court signed an order, absent objection, requiring release of the funds from the trust account. Later, Appellant refused to comply with the order and took another position in the contempt proceeding that it did not ever have the funds in its trust account. Appellant inserted itself as a party into the litigation between Respondent and Matrix by taking the position that it would hold the money in its trust account and later refusing to turn over the money.

¶ 19.  We agree with Gatzke & Ruppelt that the facts currently of record in this case do not satisfy the criteria for judicial estoppel.

■

¶ 20.  First, a later "position" was not clearly inconsistent with an earlier position. Here, there were no earlier and later "positions." Case law shows that in the context of judicial estoppel, inconsistent "positions" refers to inconsistent legal strategies or legal arguments. For instance, in *Van Deurzen v. Yamaha Motor Corp. USA*, 2004 WI App 194, 276 Wis. 2d 815, 688 N.W.2d 777, the contention that maritime law was inapplicable because a lake was not navigable clearly contradicted a position held at trial that maritime law applied because the accident occurred on navigable waters. *Id.*, 5. Likewise, in *State v. Michels*, 141 Wis. 2d 81, 414 N.W.2d 311 (Ct. App. 1987), a defendant was precluded from arguing that insufficient evidence existed for his conviction because the argument was

directly contrary to the defendant's previous argument that there was sufficient evidence for a lesser offense. *Id.* at 97–98. The statements by Gatzke & Ruppelt that Matrix had transferred the money into its trust account were not a legal strategy or argument that was later contradicted, but merely factual representations: the reference in the April 29, 2005 letter was included "as a measure of good faith"; the reference in the December 6, 2005 brief was a sentence in the background section and was completely unrelated to the argument.

¶ 21. Similarly, judicial estoppel was improperly applied also because the third element, that a party to be estopped must have "convinced the court to adopt its position," cannot be present here. In *Michels*, the defendant was judicially estopped on appeal from arguing that the evidence was insufficient to support his conviction for manslaughter, when he had requested the trial court submit manslaughter to the jury as a lesser-included offense of second-degree murder. *Id.* Similarly, in *State v. English-Lancaster*, 2002 WI App 74, 252 Wis. 2d 388, 642 N.W.2d 627, we held that the defendant was judicially estopped from challenging the sufficiency of a cautionary instruction because "[a]t trial he urged the court to generate a cautionary instruction and now he maintains that a cautionary instruction was insufficient." *Id.*, 22.

¶ 22. In *Olson v. Darlington Mutual Insurance Co.*, 2006 WI App 204, 296 Wis. 2d 716, 723 N.W.2d 713, we recently addressed the question of what constitutes "convincing a court to adopt a position." *Id.*, 5–7. We contrasted *Michels* and *English-Lancaster* with the facts in *Olson*, and noted that, unlike *English-Lancaster*, where the defendant successfully requested a jury instruction, and *Michels*, where the defendant successfully requested submission of a lesser-included

offense, in *Olson* the defendant merely asked for a limited amount of damages (less than $75,000); however, the court did not adopt that position. *Olson*, 723 N.W.2d 713, 7. In *Olson*, the request for an amount less than $75,000 was not equivalent to "convincing the court to adopt a position" in the defendant's favor. *Id.* Thus, for a court to adopt a position, not only must the court agree with a "position," but a party must also specifically request that the court adopt that particular "position."

■

¶ 23.   This did not occur here. Unlike *Olson*, where the defendant actually tried, albeit unsuccessfully, to ask for a particular amount of damages, here Gatzke & Ruppelt did not try to convince the court of anything related to the presence of the arbitration award in its trust account; rather, what it was trying to convince the court to "adopt" was its "position" that the arbitration award should not be confirmed because the arbitrator had applied the incorrect law. Whether Matrix had transferred the award money to Gatzke & Ruppelt, and whether that money was in Gatzke & Ruppelt's trust account was not an issue that was contested and, as already noted, Gatzke & Ruppelt did not advance a "position" with respect to whether any money was held in its trust account. Thus, because the references to the trust account were not a contested issue, Gatzke & Ruppelt never tried to "convince" the court of a "position" with respect to the amount of money in its trust account; there therefore was no "position" related to the trust account that the trial court could have "adopted." Feerick's focus on the trial court signing the order requiring release of the funds absent an objection does not change the fact that the only legal argument concerned the issue of whether the arbitration award

should be confirmed.[4] Thus, while the trial court was certainly justified in accepting the representations in the letter and the supplemental brief as a representation to forestall the collection efforts until the arbitration award is confirmed or overturned, in so doing the trial court does not adopt a position within the meaning of *Petty* to satisfy the requirements of judicial estoppel.

¶ 24. Because we conclude that the trial court erred in concluding that Gatzke & Ruppelt was judicially estopped from asserting that it did not have the money in its trust account, we reverse that determination.

■

¶ 25. In addition, based on its determination that judicial estoppel prevented Gatzke & Ruppelt from stating that it did not have the money in its trust account, the trial court found Gatzke & Ruppelt in contempt of court. The contempt finding was in turn the basis for harsh sanctions that the trial court levied against Gatzke & Ruppelt. Because we reverse the determination that Gatzke & Ruppelt was judicially estopped from stating that Matrix had failed to transfer the money into its

---

[4] In *Olson v. Darlington Mutual Insurance Co.*, 2006 WI App 204, 296 Wis. 2d 716, 723 N.W.2d 713, Olson also argued that the use of the terms "both cases" and "first court" in *State v. Petty*, 201 Wis. 2d 337, 348, 548 N.W.2d 817 (1996), dictates that there must be two distinct cases to invoke the doctrine and that judicial estoppel therefore did not apply to her because her case involved a single case, and we concluded that because the facts did not meet the requirement of "convincing the trial court to adopt her position," it was unnecessary to address whether judicial estoppel is available within the course of a single proceeding. *Olson*, 723 N.W.2d 713, ¶ 5. Having already concluded that Gatzke & Ruppelt did not present a "position" and that the court did not adopt its "position," we also need not determine whether judicial estoppel may be applied in a single proceeding.

trust account, we also reverse the finding of contempt and the sanctions ordered against Gatzke & Ruppelt.

¶ 26.   Finally, the factual issue of where the money is located has yet to be resolved. At the hearing on the motion for reconsideration, the trial court speculated that there were three possibilities regarding Gatzke & Ruppelt's representations that it had the money:   the representations were true, Gatzke & Ruppelt knew it, and tried to convert the money; the representations were not true, Gatzke & Ruppelt knew it and they did not have the money; or the representations were not true, and the firm took no steps to find out whether they were true or not. It appears, based on both the contempt finding and the sanctions, that the trial court believed the first option was true and that Gatzke & Ruppelt received the money, converted it, and simply refused to hand it over to Feerick. The trial court never made a factual finding to that effect however. This was error. *See McCleary v. State*, 49 Wis. 2d 263, 282, 182 N.W.2d 512 (1971) (trial court's failure to delineate the factors that influenced its decision constitutes an erroneous exercise of discretion).

¶ 27.   Indeed, it appears that after Gatzke & Ruppelt informed the court that Matrix had never paid the money into its trust account, the trial court was not concerned with the actual factual question of whether Gatzke & Ruppelt was telling the truth.[5] Rather, without an evidentiary hearing to determine what, if any,

---

[5] We note that it is difficult to assess Matrix's behavior and statements to the court, given that it did not file a brief in this appeal, even though the dispute at this point is between Matrix and Gatzke & Ruppelt.

money was in fact paid to Gatzke & Ruppelt by Matrix, the trial court simply ordered the law firm to bear the burden and imposed sanctions against the law firm for failure to pay. This was also error. *See Anderson v. Circuit Court for Milwaukee County*, 219 Wis. 2d 1, 10, 578 N.W.2d 633 (1998) ("For a reviewing court to determine whether the sanctions imposed in a particular case are just, the circuit court must make a record of the reasons for imposing sanctions in that case.").

¶ 28. Because the factual question of whether Matrix ever paid Gatzke & Ruppelt was never resolved, we remand the matter to the trial court for an evidentiary hearing to determine whether Matrix ever transferred the money meant to cover the arbitration award to Gatzke & Ruppelt. The trial court should also determine whether the principle of equitable estoppel applies; that is, whether Feerick, to his detriment, relied on an action by either Gatzke & Ruppelt or Matrix.

¶ 29. If Matrix never paid the money to Gatzke & Ruppelt, then the issue here is, as Gatzke & Ruppelt contends, nothing more than an unfortunate, yet honest and simple mistake. If this is the case, the mistake can easily be corrected and the trial court should order Matrix to do what it should have done long ago: pay Feerick the arbitration award and attorney's fees. Clearly, if the money is collectible from Matrix, there was no detriment to Feerick and equitable estoppel does not apply.[6] If, however, Matrix did pay the money to Gatzke & Ruppelt and it was lost, misplaced, or, as the

___

[6] We find it baffling that after Gatzke & Ruppelt informed the court that Matrix had never transferred the money, Matrix did not appear concerned with proving that it did transfer the money. In fact, it seems to have tried to dodge the question of

481

trial court appeared to imply, converted by Gatzke & Ruppelt, then of course Gatzke & Ruppelt is to blame and Matrix is not responsible for paying the money a second time.[7]

whether Gatzke & Ruppelt ever received the money. The only hint in the record indicating that the money was paid is an affidavit by Matrix stating:

> 5. Mr. Gatzke requested that Matrix deposit the full amount of the arbitration award in his firm's client trust account, as a show of good faith, pending the outcome of his challenge to the BBB's decision.

> 6. As confirmed in Mr. Gatzke's correspondence to Mr. Harness of April 29, 2005, as well as the representations made by Attorney Chad Levanetz in Defendant's Supplemental Brief, filed December 6, 2005, Matrix tendered the full amount of the arbitration award to Mr. Gatzke for deposit in the Gatzke & Ruppelt, S.C. client trust account.

This affidavit raises more questions than it answers. It is drafted to state only that the money was "requested," and relies on only the same April 29, 2005 letter from Gatzke & Ruppelt that the firm now insists was based on a miscommunication, and the same brief that Gatzke & Ruppelt insists was drafted based on the erroneous information contained in the April 29, 2005 letter, as evidence that the money was transferred! If Matrix did pay Gatzke & Ruppelt the amount of the arbitration award, the wording of this affidavit is suspicious.

At the hearing on the motion for reconsideration, counsel for Gatzke & Ruppelt in fact inquired about exactly why Matrix was not stating that it had paid the money. Oddly, their entire arguments, with which, as we have seen, the trial court ultimately agreed, centered on judicial estoppel and opposing an evidentiary hearing to find out exactly where the money was, that had been proposed by Gatzke & Ruppelt's counsel.

These are matters the trial court will have to resolve at an evidentiary hearing.

[7] The dissent misapplies the doctrine of judicial estoppel in a fact situation to which, as already explained above, it does not belong. Beyond calling our analysis "lengthy [and] technical,"

*By the Court.*—Orders reversed and cause remanded for further proceedings consistent with this opinion.

¶ 30. KESSLER, J. (*dissenting*). I respectfully dissent from the majority conclusion that the trial court erred in holding Gatzke & Ruppelt in contempt, in ordering Gatzke & Ruppelt to pay Feerick the arbitration award that it repeatedly represented to the court

---

and claiming that it "misses the point," Dissent, ¶ 32, the dissent does not explain how our conclusion that the doctrine of judicial estoppel is inapplicable, is allegedly erroneous.

Moreover, the dissent apparently asserts that Gatzke & Ruppelt ought to have presented "copies of the firm trust account records," Dissent, ¶ 40, and states that "conspicuous by their absence are documents that should easily establish the condition of Gatzke & Ruppelt's trust account," *id.* This exact confusion about whether the money was in fact in the trust account is, however, precisely why we are remanding this case to the trial court for a determination of whether the money was ever paid. The dissent's concern over the contents of the trust account is thus perplexing in light of the dissent's view that no evidentiary hearing is necessary.

The dissent also glosses over Matrix's role. Matrix was ordered to pay the arbitration award, but it has yet to be resolved whether it ever did. The dissent instead is of the opinion that "[t]here is no reason *in the pending action* to further involve Feerick or to further delay payment to him of the amounts already ordered by the trial court," Dissent, ¶ 50 (emphasis in dissent). Although the dissent is correct in noting that Feerick is certainly not to blame for this case being before us on appeal, by being willing to take Feerick out of the action and concluding that Gatzke & Ruppelt must pay him the amount of the judgment, the dissent sees nothing wrong with the possibility of letting Matrix get away with cheating its former lawyers out of thousands of dollars. We cannot agree that a determination of whether Matrix ever paid Gatzke & Ruppelt is unnecessary for resolving this case.

and counsel it had in its trust account, and in imposing various sanctions for contempt. Further, I see no reason to remand to the trial court and force Feerick to endure yet more delay while the court determines whether Matrix did, or did not, ever pay the money to Gatzke & Ruppelt. Whether the money was actually paid by Matrix in no way changes the undisputed fact that for nine months Gatzke & Ruppelt repeatedly represented to the court and Feerick that it had the money available in its trust account for payment to Feerick. Nor is it disputed that when ordered to pay the money to Feerick, Gatzke & Ruppelt changed its representation and denied that it then had, or had ever had, the funds. Gatzke & Ruppelt produced no trust account records to support the later representation, and did not claim to have actually reviewed the trust account until actually ordered to disburse the funds it claimed were contained there. The majority describes Gatzke & Ruppelt's conduct as "an unfortunate, yet honest and simple mistake." Majority, ¶ 29. For the reasons set forth below, I disagree and dissent from all of the majority's conclusions except their reversal of the $1000 per day sanction imposed by the trial court.

¶ 31. We determine *de novo* whether the elements of judicial estoppel exist. *Olson v. Darlington Mutual Ins.*, 2006 WI App 204, ¶ 3, 296 Wis. 2d 716, 723 N.W.2d 713.

¶ 32. The majority engages in a lengthy, technical analysis of the term "judicial estoppel." Based upon that analysis, it concludes that the trial court erred by ordering Gatzke & Ruppelt to pay the money it had long represented it held in the firm trust account. In my view, that analysis misses the point of the trial court's decision, and does not respect the fundamental purpose of judicial estoppel. As the majority correctly observes,

Majority, ¶ 16, "[j]udicial estoppel is an equitable doctrine intended 'to prevent a litigant from "playing fast and loose with the courts" '" and the doctrine "is intended to protect the judiciary as an institution from the perversion of [its] machinery." Majority, ¶ 16. To the extent that in many cases relied upon by the majority, judicial estoppel has been discussed in the context of representations in separate causes of action,[1] the term might seem to be inapposite here. To conclude, however, as the majority seems to do, that judicial estoppel cannot be applied when materially inconsistent representations of fact are made to the court and others by counsel at different times in the same case does not logically follow either from the purpose of the doctrine or the circumstances of the prior decisions. Cases relied upon by the majority also include cases where the disputed representation occurred in the same case.[2]

¶ 33. In one case relied upon by the majority, a litigant argued for one mixed factual/legal finding (*e.g.*, that certain water was "navigable water") at the trial level, and for the opposite factual/legal finding (*i.e.*, that

___

[1] *Harrison v. LIRC*, 187 Wis. 2d 491, 496, 523 N.W.2d 138 (Ct. App. 1994), (sworn statements in age discrimination case in Wisconsin and federal disability cases); *State v. Petty*, 201 Wis. 2d 337, 343, 548 N.W.2d 817 (1996) (state and federal charges for delivery of cocaine); *Salveson v. Douglas County*, 2001 WI 100, ¶¶ 38–42, 245 Wis. 2d 497, 630 N.W.2d 182 (duty disability claim and claim for lost wages because of sexual harassment).

[2] *State v. Michels*, 141 Wis. 2d 81, 97, 414 N.W.2d 311 (Ct. App. 1987) (judicial estoppel applied where argument on appeal inconsistent with argument made at trial court); *State v. English-Lancaster*, 2002 WI App 74, ¶ 22, 252 Wis. 2d 388, 642 N.W.2d 627, (judicial estoppel bars complaint on appeal about cautionary instruction requested and received at trial court).

the same water was not "navigable water") at the appellate level. *Van Deurzen v. Yamaha Motor Corp., U.S.A.*, 2004 WI App 194, ¶ 1, 276 Wis. 2d 815, 688 N.W.2d 777 (such representations described as a "textbook example of judicial estoppel"). As we explained in *Van Deurzen*, when we refused to permit such inconsistent representations, "[j]udicial estoppel has three identifiable boundaries:   (1) the party's position is clearly inconsistent with his or her prior position; (2) the party to be estopped succeeded below in selling its position to the court; and (3) the facts at issue are the same." *Id.*, ¶ 5.

¶ 34.   The three elements we described in *Van Deurzen* are essentially a paraphrase of the test our supreme court set out in *Salveson v. Douglas County*, 2001 WI 100, ¶ 38, 245 Wis. 2d 497, 630 N.W.2d 182, when it dealt with a representation of physical disability in a state proceeding (knee injury suffered by a street paramedic), and a later claim in a federal complaint of sex discrimination based upon failure to receive a promotion. In discussing whether judicial estoppel applied to these circumstances, the court held:

> Three elements are required for a court to invoke the doctrine of judicial estoppel:   (1) the later position must be clearly inconsistent with the earlier position; (2) the facts at issue should be the same in both cases; and (3) the party to be estopped must have convinced the first court to adopt its position.

*Id.* (citations omitted).

¶ 35.   Applying the *Salveson* criteria to the facts in this case, the trial court could properly conclude that the elements of judicial estoppel had been met because:   (1) Gatzke & Ruppelt's later position (that the money was never in the trust account) was clearly

inconsistent with the earlier position (that the money was in the trust account); (2) whether Feerick was entitled to receive the money was the only disputed issue in the case from the beginning; while (3) the court found that not only Feerick but also the court accepted and relied upon Gatzke & Ruppelt's representations over a period of nine months that the money was in the firm trust account available for payment to Feerick.

¶ 36. In *Van Deurzen*, the party claimed a certain body of water was navigable water; here Gatzke & Ruppelt claimed that the arbitration award had been paid into the client trust account. In *Van Deurzen*, the trial court adopted the navigable water assertion and ruled in accord with that finding; here the trial court accepted Gatzke & Ruppelt's representation and ultimately ordered, specifically in accord with that representation, that the money must be paid by Gatzke & Ruppelt to Feerick from the trust account. In *Van Deurzen*, the same party later claimed (on appeal) that the same body of water was after all not navigable; here, Gatzke & Ruppelt later claimed (in defense of contempt) that the money was after all not in the trust account. To conclude, as the majority does, that our holding in *Van Deurzen* does not permit the trial court here to apply judicial estoppel to Gatzke & Ruppelt's completely inconsistent representations, accepted and acted upon by the trial court, is to hide in a jungle of procedural hedging the fundamental purpose of judicial estoppel—that is, to protect the courts from manipulation of the justice system by allowing a litigant, or worse, a lawyer, to make inconsistent representations with impunity. `

¶ 37. We are to affirm a trial court in the exercise of discretionary acts if there is a basis in the record which supports the trial court's conclusion. *In re*

*Paternity of Jeremy D.L.*, 177 Wis. 2d 551, 559, 503 N.W.2d 275 (Ct. App. 1993) (An appellate court affirms if the trial court reached "a result that the evidence would sustain had a specific finding supporting that result been made."). There is ample support in the record for the trial court's discretionary decision to apply the equitable doctrine of judicial estoppel, and ample support to come to the same result by application of the statutory requirement that attorneys take reasonable steps to investigate the facts before representing to a court that those facts are true.

¶ 38. Lawyers, by signing pleadings or other documents presented to the court, are required to have performed sufficient inquiry under the circumstances to certify that the facts asserted have evidentiary support. The record here supports the conclusion that Gatzke & Ruppelt did not satisfy that requirement before representing to the trial court that the trust account contained the arbitration award funds. WISCONSIN STAT. § 802.05(2), as applicable to this case, provides:

> (2) REPRESENTATIONS TO COURT. By presenting to the court, whether by signing, filing, submitting, or later advocating a pleading, written motion, or other paper, an attorney or unrepresented party is certifying that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances, all of the following:
>
>     . . . .
>
> (c) The allegations and other factual contentions stated in the paper have evidentiary support or, if specifically so identified, are likely to have evidentiary support after a reasonable opportunity for further investigation or discovery.

¶ 39. Further, an attorney's failure to perform this due diligence inquiry can result in a variety of court-imposed sanctions under Wis. Stat. § 802.05(3), independent of any finding of contempt.

(3) Sanctions. If, after notice and a reasonable opportunity to respond, the court determines that sub. (2) has been violated, the court may impose an appropriate sanction upon the attorneys, law firms, or parties that have violated sub. (2) or are responsible for the violation in accordance with the following:

(a) *How initiated*

. . . .

2. 'On court's initiative.' On its own initiative, the court may enter an order describing the specific conduct that appears to violate sub. (2) and directing an attorney, law firm, or party to show cause why it has not violated sub. (2) with the specific conduct described in the court's order.

(b) *Nature of sanction; limitations.* A sanction imposed for violation of this rule shall be limited to what is sufficient to deter repetition of such conduct or comparable conduct by others similarly situated. Subject to the limitations in subds. 1. and 2., the sanction may consist of, or include, directives of a nonmonetary nature, an order to pay a penalty into court, or, if imposed on motion and warranted for effective deterrence, an order directing payment to the movant of some or all of the reasonable attorney fees and other expenses incurred as a direct result of the violation subject to all of the following:

1. Monetary sanctions may not be awarded against a represented party for a violation of sub. (2) (b).

2. Monetary sanctions may not be awarded on the court's initiative unless the court issues its order to

489

show cause before a voluntary dismissal or settlement of the claims made by or against the party that is, or whose attorneys are, to be sanctioned.

(c) *Order.* When imposing sanctions, the court shall describe the conduct determined to constitute a violation of this rule and explain the basis for the sanction imposed.

¶ 40. Between April 29, 2005, when Gatzke & Ruppelt first wrote the letter asserting the arbitration award funds were in the firm trust account, and February 13, 2006, when Gatzke & Ruppelt took the opposite position and asserted that the funds had never been in the trust account, Gatzke & Ruppelt affirmatively and repeatedly represented that the full amount of the arbitration award was in the firm trust account. On April 29, 2005, Gatzke & Ruppelt wrote that Matrix had "deposited the amount of the award in the trust account of Gatzke & Ruppelt, S.C." On May 2, 2005, Feerick filed a complaint to enforce the arbitration award and attached as an exhibit Gatzke & Ruppelt's April 29 letter asserting possession of the funds in the trust account. On May 20, 2005, Gatzke & Ruppelt answered the complaint, making no challenge to the authenticity or accuracy of the letter attached to the complaint. On December 6, 2005, as part of the briefing scheduled for the motion to confirm the arbitration award, on the first page of "Defendant's Supplemental Brief," a Gatzke & Ruppelt attorney states: "Matrix, upon its objection to the arbitrator's original determination and clarification, *placed the adjudged amount in a trust account at Gatzke & Ruppelt, S.C."* (Emphasis added.) On December 9, 2005, Feerick again attached a copy of the April 29 letter as an exhibit to his supplemental brief. All of these documents are reviewed by

the court for the December 19, 2005 hearing on confirmation of the arbitration award. Feerick asked the court to "confirm the award, grant our request for the *release of the funds immediately from their trust account.*" (Emphasis added.) Counsel from Gatzke & Ruppelt, who had earlier filed the brief described above acknowledging deposit of the arbitration award funds in the trust account, said nothing to dispute the firm's possession of the funds. The transcript of that hearing indicates the Gatzke & Ruppelt attorney was present, but made no objection, when the court stated: "I'm granting Plaintiff's motion to confirm the arbitration and *order the funds be released.*" (Emphasis added.) The trial court told Feerick's counsel to draft an order "under the five-day rule." On that same day, December 19, 2005, a proposed order was served upon Gatzke & Ruppelt by fax and mailed to the court. The order required payment of a specific sum and directed that "Gatzke & Ruppelt S.C. shall *immediately release funds held in trust for the entire money judgment amount.*" (Emphasis added.) The trial court signed the order on January 6, 2006. In the nineteen days between the day when the order was faxed and the day the court signed the order, Gatzke & Ruppelt did nothing to tell the court the money was not in the trust account. When Gatzke & Ruppelt did not pay the award, Feerick moved, on February 2, 2006, for a finding of contempt. Still, Gatzke & Ruppelt made no attempt to advise the trial court that the money was not in the firm trust account. At the contempt hearing on February 13, 2006, for the first time, Gatzke asserted by affidavit that the money was not in the trust account and that the prior representations had all been a mistake. Gatzke did not personally appear at the contempt hearing, did not provide copies of the firm trust account records to

support the new assertion, and did not file a written argument in support of the reasonableness of the "mistake" now claimed. Indeed, conspicuous by their absence are documents that should easily establish the condition of Gatzke & Ruppelt's trust account from the beginning of the representations through the court order.

¶ 41. On each of the occasions when Gatzke & Ruppelt said the funds were in the firm trust account, the lawyer making the representation was required by WIS. STAT. § 802.05 to have made reasonable inquiry to determine that the fact represented had reasonable evidentiary support. For an attorney in a firm to verify the balance in a client trust account should be one of the simplest, and most important, tasks routinely performed. If the funds were never in Gatzke & Ruppelt's trust account, perhaps reasonable inquiry was never made. If the funds were in the account at one time, and later disbursed, reasonable inquiry as to the status of the trust account should have disclosed the change and modified the representation accordingly. Even when a proposed order for disbursal of the funds was sent to Gatzke & Ruppelt for approval, Gatzke & Ruppelt does not claim to have made any effort to verify the money was in the trust account.

¶ 42. The majority's characterization of this sordid sequence of significant misrepresentation by one or more members of the bar as "an unfortunate, yet honest and simple mistake" by Gatzke & Ruppelt, Majority, ¶ 29, seems to me to be a tortured reading of the record. The representations mattered. They went on for nine months with no effort to verify the facts, when the facts could easily have been verified. When one representation was dropped, and its opposite adopted, two different explanations were offered. First, in the con-

tempt hearing, the Gatzke affidavit, and those of the two former associates, said there was a misunderstanding of an oral communication. Later, on Gatzke & Ruppelt's motion to reconsider, new counsel for Gatzke & Ruppelt made repeated reference to an "internal memorandum" which was alleged to be in counsel's possession, had not been disclosed to opposing counsel and was not shared with the court. A specific refusal to produce what is claimed to be evidence supporting one's innocence of contempt is, to say the least, a bizarre legal and strategic approach. Such stratagem certainly does not suggest "an unfortunate, yet honest and simple mistake."

¶ 43. The court expressed concern, perhaps dismay, that nine months had passed without any attorney actually verifying the Matrix balance in the trust account, while at the same time continuing to represent to both the court and counsel that the money was safe and available. Without specifically referencing WIS. STAT. § 802.05, the trial court's findings and analysis applied its principles:

> There is no evidence of what steps, if any – I suspect none – were taken that Counsel took to ensure the representation [Counsel] made was accurate.
>
> . . . .
>
> Counsel took no steps to verify [the April 2005, letter's] accuracy. [Counsel] is a partner in the firm. There is no question [Counsel] has access to information in the trust account.
>
> . . . .
>
> [W]hen one makes a representation as to an important fact, they have some obligation to ensure it is accurate.
>
> . . . .

But given the representation and the multiple times it was repeated, there's clear opportunity to object to the representation if indeed was not true; and yet, no objection was made.

That is not sufficient. Checking the trust account is not onerous. At some point, [Counsel] had an obligation to verify . . . .

[Counsel] either made the representation knowing it was false . . . or made the representation without verifying the truth or falsity of the representation; and given the easy access to that information, [Counsel] acted in reckless disregard of the truth, and that should not be condoned.

. . . .

[T]here is no evidence . . . what I think is really very, very troubling – no evidence that [Counsel] checked the trust account at any time to see if the statement [Counsel] made that was important – 22,000 is important – was correct.

¶ 44.  WISCONSIN STAT. § 802.05 does not allow an attorney a "good faith" defense of reliance solely on a statement from a client; rather the statute imposes an affirmative duty of reasonable inquiry before making a factual representation in a court proceeding. *Riley v. Isaacson*, 156 Wis. 2d 249, 259, 456 N.W.2d 619 (Ct. App. 1990). In determining the reasonableness of an attorney's inquiry, a court must consider:  (1) "the amount of time the attorney had to investigate the claims"; (2) "the extent to which the attorney had to rely on the client for the underlying facts"; (3) "whether the case was accepted from another attorney;" (4) "the complexity of the facts"; and (5) "whether discovery would benefit the factual record." *Belich v. Szymaszek,*

224 Wis. 2d 419, 430–31, 592 N.W.2d 254 (Ct. App. 1999). At minimum, some affirmative investigation is required. *Id.* at 432.

¶ 45. The record contains not a scintilla of evidence that Gatzke & Ruppelt actually verified the status of the Matrix trust account balance before representing to the court and opposing counsel that the arbitration award was in the trust account. Further, the record is similarly devoid of even a hint that the account balance was checked before the representations continued, and Gatzke & Ruppelt's letter making that representation was included repeatedly in pleadings in this case. The failure to check easily verifiable facts is a violation of an attorney's obligation of due diligence under Wis. Stat. § 802.05(2)(c). Sanctions can properly be imposed for such violations. Here, the sanction of requiring the law firm to make good on its representation by paying the money it claimed it had, can reasonably be said to be necessary "to deter repetition of such conduct or comparable conduct by others similarly situated." The same can be said for the court's decision to award the attorney fees incurred by Feerick in the proceedings that finally brought the misrepresentation to light. All are within the trial court's discretion, and there is ample evidence in the record to sustain the exercise of that discretion. *See* Wis. Stat. § 802.05(3)(b).

¶ 46. In analyzing the contempt motion,[3] the court discussed the sequence of events leading to its contempt finding:

---

[3] *See* Wis. Stat. § 785.03 which states, in relevant part:

(1) Nonsummary procedure. (a) *Remedial sanction.* A person aggrieved by a contempt of court may seek imposition of a remedial sanction for the contempt by filing a motion for that purpose in the proceeding to which the contempt is related. The court, after notice and hearing, may impose a remedial sanction authorized by this chapter.

[Counsel] got the order. The order was you release [the arbitration award funds] from the trust fund. [Counsel] made no objection to the order; no objection, not even within five days, not even after the Court signed the order, not until the plaintiff had to come to court and bring a motion for contempt and then not until the day of the motion.

. . . .

I find it ironic Counsel for [Gatzke & Ruppelt] now wants to place the funds in his trust account for payment to the court. That offer demonstrates the reliance the plaintiff had, the reliance that the funds are there and any delay would not impair the ability to collect.

. . . .

There was a representation. There was reliance on that representation. The plaintiff relied on it to his detriment.

[Gatzke & Ruppelt] say now the representation was not true. Plaintiff has had to bring the motion for contempt; and on this record, it's not disputed Plaintiff is entitled to the amount awarded by the arbitrator and confirmed by this court . . . .

---

(b) *Punitive sanction.* The district attorney of a county, the attorney general or a special prosecutor appointed by the court may seek the imposition of a punitive sanction by issuing a complaint charging a person with contempt of court and reciting the sanction sought to be imposed. The district attorney, attorney general or special prosecutor may issue the complaint on his or her own initiative or on the request of a party to an action or proceeding in a court or of the judge presiding in an action or proceeding. The complaint shall be processed under chs. 967 to 973. If the contempt alleged involves disrespect to or criticism of a judge, that judge is disqualified from presiding at the trial of the contempt unless the person charged consents to the judge presiding at the trial.

> The only question is whether [Gatzke & Ruppelt] must pay it or Defendant Matrix. There is no reason for further delay while that dispute is resolved.

¶ 47. The trial court followed the correct procedure prior to finding Gatzke & Ruppelt in contempt. The court need not determine whether Matrix did, or did not, pay the award into the client trust account in order to justify finding Gatzke & Ruppelt in contempt. As discussed above, Gatzke & Ruppelt (not Matrix) led the court to believe certain facts were true (that the arbitration award funds were in the trust account), then Gatzke & Ruppelt (not Matrix) asserted the facts were not true (Gatzke & Ruppelt's claim that the firm did not have and never had the funds). Gatzke & Ruppelt (not Matrix) refused to comply with the court's order.

¶ 48. Having found that Gatzke & Ruppelt made no timely objection to the court order of December 6, 2005, directing the firm to pay the arbitration award to Feerick, and further having found that Gatzke & Ruppelt did not pay the award to Feerick, the court had a factual and legal basis upon which to exercise its discretion and find Gatzke & Ruppelt in contempt under the provisions of WIS. STAT. §§ 785.02–04. It also had the authority under WIS. STAT. §§ 785.03(1) and 785.04(1) to order payment of the arbitration award (which purged the contempt) and Feerick's attorney fees under § 785.04 to make Feerick whole.

¶ 49. However, the additional sanction of $1000 per day until paid which the court imposed appears to be punitive and beyond the authority of the court in these circumstances. WISCONSIN STAT. § 785.03(1)(b) only permits punitive sanctions to be requested by the district attorney, attorney general or special prosecutor.

Such sanctions are described in terms of a fine or imprisonment. Because the penalty of $1000 per day was, at its essence, an advance punishment for anticipated future non-compliance with the court order to pay the arbitration award and attorney fees, it was a punitive sanction, and thus beyond the trial court's power under the present circumstances. Because the record also does not establish a basis under WIS. STAT. § 802.05(3) for that punitive sanction, I would join the majority in reversing that portion of the sanction.

¶ 50. The record does not establish whether Feerick has yet received the funds to which he became entitled in 2005 as a result of the arbitration award. In my view, it would be unconscionable to further delay payment to Feerick if he has not received the funds the trial court ordered. There is no reason *in the pending action* to further involve Feerick or to further delay payment to him of the amounts already ordered by the trial court. Any determination as to whether Gatzke & Ruppelt received the sum from Matrix with which to pay the arbitration award is, in my view, a matter between Matrix and Gatzke & Ruppelt, the resolution of which does not involve Feerick and should not require Feerick to participate in further litigation. Any dispute between Gatzke & Ruppelt and Matrix should be resolved between them in separate proceedings.

¶ 51. For all the reasons set forth above, I respectfully dissent from all of the majority's conclusions except imposition of the punitive sanction of $1000 per day until the order of January 6, 2006, was paid. I join the majority in reversing imposition of that sanction.